Eugene FRANKLIN, Plaintiff,

v.

FIRST MONEY, INC., d/b/a E–Z Finance Plan, Defendant.

Civ. A. No. 75–2003.

United States District Court,
E. D. Louisiana.

Dec. 4, 1976.

Mark G. Murov, Lawrence B. Fabacher, II, New Orleans, La., Ford Dieth, Asst. U. S. Attys., New Orleans, La., Colin R. C. Dyer, U. S. Dept. of Justice, Antitrust Div., Washington, D. C., for plaintiff.

David S. Willenzik, New Orleans, La., for defendant.

ALVIN B. RUBIN, District Judge:

The defendant has moved for summary judgment in its favor on the basis that one provision of the Truth-in-Lending Act, Section 129(a)(7)[1] and two provisions of the regulations promulgated pursuant to that Act, Sections 226.8(b)(4)[2] and 226.8(*l*)[3], violate the due process clause of the 5th Amendment to the Constitution[4] because they are too vague to enable persons subject to these provisions to determine whether or not their actions violate the law. They also contend that due process is violated because Section 130(a) of the Act, 15 U.S.C. § 1640(a), imposes "punitive-type penalties" without requiring proof of actual damages.

### I.

The due process clause requires that civil and criminal statutes, and regulations promulgated pursuant to statutory authority, be sufficiently clear that persons who are affected can gain a reasonably clear idea of what the law requires of them. *Jordan v. De George*, 1951, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886; *Champlin Refining*

---

1. 15 U.S.C. Section 1639(a)(7).

2. 12 C.F.R. 226.8(b)(4).

3. 12 C.F.R. 226.8(*l*).

4. No person shall . . . be deprived of life, liberty, or property without due process of law . . . ." U.S.Const. Amend. V. The plaintiff's motion for partial summary judgment on the statutory issues raised by this case was granted on March 23, 1976. The constitutional question is considered separately because, had the court found that the defendant's actions did not violate the statute, the constitutional issues would have been reached. The defendant's brief on the constitutional issues appeared to seek reconsideration of the statutory issue, but defendant's counsel stated at oral argument that he did not seek reconsideration and that the brief was directed to the difficulty of determining whether there was a violation of the statute to emphasize the problems raised for consumer credit companies by the Act. Thus, the merits of the court's original decision are not directly at issue here.

*Co. v. Corporation Commission of the State of Oklahoma,* 1931, 286 U.S. 210, at 242–3, 52 S.Ct. 559, 76 L.Ed. 1062; *A. B. Small Co. v. American Sugar Refining Co.,* 1924, 267 U.S. 233, at 238–9, 45 S.Ct. 295, 69 L.Ed. 589. One of the two statutes at issue in this suit, 15 U.S.C. § 1639(a)(7) reads:

(a) Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable: . . .

\* \* \* \* \* \*

(7) The default, delinquency, or similar charges payable in the event of late payments.

The regulations promulgated pursuant to it and which are challenged as unconstitutional read:

(a) General rule. Any creditor when extending credit other than open end credit shall . . . make the disclosures required by this section. . . . Except as otherwise provided in . . . this section, such disclosures shall be made before the transaction is consummated.

\* \* \* \* \* \*

(b) Disclosures in sale and nonsale credit. In any transaction subject to this section, the following items, as applicable, shall be disclosed:

\* \* \* \* \* \*

(4) The amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments.

12 C.F.R. 226.8(b)(4).

(*l*) Deferrals or extensions. In the case of an obligation other than an obligation upon which the amount of the finance charge is determined by the application of a percentage rate to the unpaid balance, if the creditor imposes a charge or fee for deferral or extension, the creditor shall disclose to the customer

(1) The amount deferred or extended;

(2) The date to which, or the time period for which payment is deferred or extended; and

(3) The amount of the charge or fee for the deferral or extension.

12 C.F.R. 226.8(*l*)(1)(2)(3).

In an earlier opinion in this case, the Court found that a monetary charge made by the defendant, which the defendant called a "deferral charge," was, in fact, a "delinquency charge" and was required by law to be disclosed at the outset of the credit agreement, in compliance with Section 226.8(b)(4) of the regulations. The defendant had argued that this was a true deferral charge and that Section 226.8 does not require deferral charges to be disclosed when the loan is made, but only when the deferral is actually granted.

■ The defendant contends the court's decision "startled" it. The decision was, it asserts, so unpredictable that a regulation permitting it to be reached is unconstitutional. But the fact that a decision interpreting a statute or regulation surprises the parties does not make the law unconstitutional. The due process clause does not protect citizens against judicial decisions that they consider unforeseeable, nor does it assure that litigants will always receive judgments on their lawsuits that they can accept with equanimity.

■ The defendant complains that judicial interpretations of the Truth-in-Lending Act have been so inconsistent that creditors have had no basis for choosing among the various interpretations of the Act's provisions and regulations. While the defendant has made no showing that the issue in this case has been treated differently by any other court in this circuit, it cites a decision from the District of Iowa, *Kenney v. Landis Financial Group, Inc.* (No. 71–C–32CR, Nov. 1, 1973, 5 CCH CCC Para. 98,937) which supports its view of the issue.[5] There are

---

**5.** The defendant cites numerous conflicting cases which deal with whether an acceleration clause is a default charge. But that issue was not raised in this lawsuit, nor may a good

400 federal district judges and it is not a test for the constitutionality of a statute that it be so unambiguous that all judges will read the statute in only one way. The decision of one federal district court may persuade another judge who must decide the same issue, but the second nisi prius judge is not constrained to accept the reasoning of the first to do so, and to adopt his rationale. It is one of the primary functions of the Courts of Appeal to resolve conflicts among the district courts, just as it is one of the major duties of the Supreme Court to decide issues on which the Courts of Appeal for various circuits have differed.[6] Indeed, if every statute were so clear as to permit only one reading, judicial interpretation would never be necessary.

None need dispute the straw man formulation of the defendant: "[T]he courts are not free to substitute their own judgment as to what disclosures should be required under the Act and regulations for the express disclosures actually required by Congress and the Federal Reserve Board." (p. 36 defendant's brief) If this court has failed properly to divine Congressional intent, the Court of Appeals will correct its misconception. But the fact that a judge may commit error does not render unconstitutional the statute or regulation that he seeks to interpret.

A statute so vague as to have no predictable meaning is void for vagueness. But this doctrine does not ordain the unconstitutionality of a statute that two lawyers may read differently, nor does it mean that persons subject to the law may bank against startling or inconsistent decisions. The fundamental purpose of the doctrine is to prevent capricious and unforeseeable enforcement of the law, and to require its application in a fair and reasonable manner. *Colten v. Kentucky*, 1972, 407 U.S. 104, at 110, 92 S.Ct. 1953, 32 L.Ed.2d 584. The Supreme Court has, in several notable cases, struck down statutes because of vagueness. In *A. B. Small*, supra, the challenged statute made it illegal for a person to charge "unjust or unreasonable" prices for "necessaries." In *Champlin*, supra, the court held unconstitutionally vague a statute which prohibited "waste" in the production of crude oil.

However, "there are limitations in the English language with respect to being both specific and manageably brief . . . ." *Civil Service Commission v. National Association of Letter Carriers*, 1973, 413 U.S. 548 at 578, 93 S.Ct. 2880 at 2897, 37 L.Ed.2d 796. In *Arnett v. Kennedy*, 1974, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15, the Court ruled that the phrase "such cause as will promote the efficiency of the service" was a sufficiently clear standard for

---

analogy be made between the issues. The problem in the instant lawsuit revolves around the true nature of the so-called deferral charge; obviously, calling a delinquency charge a deferral charge does not make it one. For this reason the Fifth Circuit's recent decision in *Martin v. Commercial Securities Co., Inc.*, 539 F.2d 521 (1976) is inapposite. (Indeed, *Martin's* general language concerning the interpretation of the words "default" or "delinquency charge" supports this court's interpretation: The regulation "mandates disclosure only of those specific monetary sums imposed upon the debtor because of the late payment of an installment.") It should not be necessary to *point out that the defendant has no standing to* complain of alleged unconstitutional vagueness on the acceleration clause issue which does not aggrieve it, but which may aggrieve other creditors.

**6.** The Report of The Commission on Revision of the Federal Court Appellate System, "Struc-

ture and Internal Procedures: Recommendations for Change", concluded: The resolution of intercircuit conflicts is widely regarded as a primary function of our one national court. . . ." p. 16. The Commission urged the creation of a National Court of Appeal to resolve the numerous conflicts in interpretation that arise: "The need for additional appellate capacity to maintain the national law is most starkly manifested by the existence of unresolved conflicts between different courts of appeals . . . on an issue of federal law. Often the conflicts are direct and frontal, arising because two or more courts have come to opposite conclusions in cases which cannot be distinguished. Less direct conflicts however, can also produce uncertainty and confusion in the national law." Id.

Obviously conflicts in circuit courts so profound indicate that it is not a prerequisite of statutory validity that the law permit only one reading.

dismissal of public employees. 416 U.S. at 162, 94 S.Ct. at 1648. The Court based its holding on the practical difficulty of drawing statutes that are reasonably clear and yet not unreasonably elaborate and specific. Id.

█ Predictability of judicial interpretation of the laws is desirable because citizens must abide by those laws and should not have to guess their meaning. *Connally v. General Construction Co.*, 1926, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322. But neither absolute uniformity of interpretation, nor total absence of ambiguity is semantically or practically achievable—or, it necessarily follows—constitutionally required. "The test is whether the language conveys sufficiently definite warning of the proscribed conduct when measured by common understanding and practices." *Jordan v. De George*, 1951, 341 U.S. 223 at 231–2, 71 S.Ct. 703, at 708, 95 L.Ed. 886. The relevant inquiry is not whether this court's decision was foreseen, but whether the language of the regulations and the statute or other factors made it reasonably foreseeable.

· █ The language and context of § 226.-8(*1*) indicate that a "deferral charge" is not merely a charge exacted by the creditor for late payment. If it were, "deferral charge" and "delinquency charge" would have virtually identical fiscal, but different legal, consequences. Both would be financial penalties imposed on late-paying borrowers. Though the term "deferral charge" denotes a payment in exchange for the privilege of postponing payment, and, in that sense, has a distinct meaning, that meaning is logically connected with the notion of an exchange of consideration for a promise,[7] i. e., a contract. Contracts exist by virtue of mutual agreement. Thus, the only sense in which a deferral charge is distinguishable from a delinquency charge is the notion that a deferral involves an agreement between the parties; this is in contrast to a charge exacted unilaterally by the creditor merely because the payment is late, that is, a delinquency charge. Thus reading the two terms, the provision of Section 226.8(*1*) of the regulations permitting disclosure of a deferral charge at the time when the rate payment is made makes sense: there is no need to disclose the charge when the loan is originally made because it will be paid only if an agreement to delay payment is made at some future time. The consumer has no need of the information at the outset because he may never enter into such an agreement; if he decides to seek one, he may then find out what it costs and determine whether he wishes to consent to it. Thus a deferral charge in the context of the purposes of the Truth-in-Lending Act is not the same as a unilateral charge imposed for late payment, and this court's holding was therefore not unpredictable.

█ The defendant refers to two administrative statements on the interpretation of Section 226.8(*1*) to support its argument that this court's ruling was unforeseeable.[8]

7. The defendant's brief includes this concept in its definition of deferral charges: ". . . [D]eferral charges are generally defined in the consumer credit industry to include charges which are assessed by a creditor in consideration for allowing a borrower to defer payment. . . ." (Page 35 defendant's brief.)

8. The defendant might also have referred to state law for guidance as to the meaning of "deferral charge". The Louisiana Consumer Credit Law contains a provision dealing with deferral charges and the drafters of that provision apparently assumed that such charges are unilaterally imposed:

The parties may agree in writing at the time of a precomputed consumer credit transaction that if an installment is not paid within ten days after its due date, the extender of credit may unilaterally grant a deferral and make charges as provided in this section. La.R.S. 9:3526(B). However, that statute cannot be considered in isolation. It must be considered in conjunction with the federal act. The Truth-in-Lending Act differentiates between deferral and delinquency charges for purposes of determining when disclosure must be made, whereas the state act does not, since it is not concerned with the disclosure problem. While the state act suggests a definition of "deferral" inconsistent with the holding of this court in this case, it is not an index to federal legislative intent and therefore does not justify unreserved reliance. The possibility that a creditor might look to a provision of state law which does not purport to define the term in question, but which suggests a particular definition, does not make a contrary definition un-

First, it relies on an "informal staff opinion letter" of the Federal Trade Commission, dated October 27, 1969. While that letter was published in the Commerce Clearing House, Inc. Consumer Credit Guide, Para. 30,834, vol. 5, and does indicate that notice is required only at the time of deferral, it was merely the opinion of one staff member of the Federal Trade Commission and was informal in character. It was not published in the Code of Federal Regulations and did not purport to be the official position of either the Federal Trade Commission or the Federal Reserve Board. The defendant does not allege that it did, in fact, rely on this letter. In any event, since courts may differ with such letters in their interpretations of the regulations,[9] the defendant's reliance on this letter, if reliance existed, did not preclude a contrary judicial interpretation. Indeed, the other administrative pronouncement on the issue to which the defendant has referred the court would give a reasonable person a contrary impression of the law. A Federal Reserve Board letter of August 8, 1972, published at 5 CCH, CCG Para. 30,869, appears to assume that a deferral is, by its nature, consensual.

> Section 226.8(*1*) of Regulation Z was primarily directed to those situations in which the creditor *offers* the customer a deferral or extension of his obligation. (emphasis supplied)

## II.

■ The defendant alleges that the civil penalty provision of the Act, section 130(a), 15 U.S.C. section 1640(a), is "punitive" and "penal" as applied, because debtor-plaintiffs may recover damages without proof of actual monetary loss. That section of the Act requires courts to award successful individual Truth-in-Lending plaintiffs either $100.00 or twice the amount of the finance charge, but, in no case, more than $1000. Therefore, when violations are "unintentional" or "hypertechnical", Section 130(a) violates due process of law.

The defendant suggests that the courts should follow other, ostensibly more equitable, paths to reach the remedial goals of the Truth-in-Lending Act. Specifically, defendant suggests the procedure required for assessing damages in Truth-in-Lending class actions, which includes consideration of several variable factors, including the amount of actual damages and the intentional nature of the creditor's violation.[10]

■ Courts may not ignore the clear wording of statutes and impose, in lieu of those statutes, measures that seem more just or efficacious.[11] Indeed, the fact that Congress amended Section 130(a) only with respect to class actions and not individual actions manifests a legislative intention to impose strict liability, as opposed to a more flexible test for recovery of damages.

The defendant frames the alleged due process violation in the language of the rule against "conclusive presumptions" of determinative facts.[12] However, there is no presumption inherent in Section 130(a) that actual damages are sustained. The Su-

---

foreseeable. The defendant offered no evidence to show that deferral charges are invariably or even generally considered to be unilaterally imposed charges in the credit industry.

9. Federal Reserve Board staff opinions, particularly on subjects within the Board's unique competence, are "entitled to great weight", but are not "binding" on the court. *Philbeck v. Timmers Chevrolet*, 5 Cir. 1974, 499 F.2d 971, at 976.

10. See pp. 91–2, defendant's brief. The Truth-in-Lending Act was amended in October 28, 1974 with respect to class actions. Prior to the amendment the civil damages section of the Act did not differentiate between class and individual recovery.

11. "The statutory scheme is within the power granted to Congress under the Commerce Clause. It is not a function of the courts to speculate as to whether the statute is unwise or whether the evils sought to be remedied could better have been regulated in some other manner." *Mourning v. Family Publications Service*, 1973, 411 U.S. 356, at 377–388, 93 S.Ct. 1652, at 1665, 36 L.Ed.2d 318.

12. See defendant's brief, p. 93–4.

preme Court disposed of this argument in *Mourning v. Family Publications Service,* 1973, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318, a constitutional challenge to the "Four Installment Rule" [13] of the Act:

> The challenged rule contains no . . presumption. The rule was intended as a prophylactic measure; it does not presume that all creditors who are within its ambit assess finance charges, but rather, imposes a disclosure requirement on all members of a defined class in order to discourage evasion by a substantial portion of that class.

411 U.S. at 377, 93 S.Ct. at 1664. Since the plaintiff may recover both actual damages *and* the statutorily fixed civil penalty, it is apparent that the drafters of the Act did not intend that the civil penalty should approximate actual damages.

It was within Congress' power to establish a "broad regulatory scheme." [14] As long as the statute is sufficiently clear to afford reasonable notice of what actions constitute a violation, no problem of constitutional dimensions is raised. This court has found no unconstitutional vagueness in the challenged regulation, nor any unforeseeable application of the regulations in this case. Accordingly, the defendant's motion for summary judgment is denied.

---

13. This rule requires disclosure whenever credit is offered payable in more than four installments, regardless of whether the creditor exacts a charge called a finance charge.

14. *Mourning v. Family Publications Service,* supra, 411 U.S. at 375, 93 S.Ct. 1652. Note that Congress has not flinched, in other areas of the law, from exacting damages which do not necessarily reflect actual damages. See, e. g. the treble damages provision of the Antitrust laws. 15 U.S.C. § 15.