**Cynthia GALJOUR, et al.**

v.

**GENERAL AMERICAN TANK CAR CORPORATION, et al.**

Civ. A. No. 87–5003.

United States District Court,
E.D. Louisiana.

April 19, 1991.

---

Charles J. Imbornone, New Orleans, La., Joseph M. Bruno, Bruno & Bruno, New Orleans, La., for plaintiffs.

Benjamin R. Slater, Jr., Benjamin R. Slater, III, Charles N. Nunmaker, Mark E. Van Horn, Monroe & Lemann, New Orleans, La., for defendant, Norfolk Southern Corp.

Raymond J. Salassi, Jr., Harry S. Hardin, III, Pierre V. Miller, II, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendant, CSX Transp., Inc.

David S. Kelly, Walter F. Marcus, III, Bryan C. Misshore, John J. Hainkel, III, Lemle, Kelleher Law Firm, New Orleans, La., for defendant, Illinois Central R. Co.

Frederick W. Bradley, Liskow & Lewis, New Orleans, La., for defendant, GATX Terminals Corp.

James G. Burke, Jr., Kimbley A. Kearney, Burke & Mayer, New Orleans, La., for defendant, Phillips Petroleum Co. and Phillips 66 Co.

John P. Manard, Jr., Sallye G. Webb, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for defendant, General American Transp. Corp.

George J. Richaud, Young, Richaud, Theard & Myers, New Orleans, La., for defendant, Mitsui and Co. (U.S.A.), Inc.

William A. Percy, III, Asst. Atty. Gen., New Orleans, La., for intervenor, Louisiana Atty. Gen.

## ORDER AND REASONS

MENTZ, District Judge.

This matter is a diversity action for personal injury and property damages arising out of the explosion and fire of a railroad tank car carrying the chemical butadiene. In addition to compensatory damages, the plaintiffs assert claims for punitive or exemplary damages pursuant to Louisiana Civil Code article 2315.3, which provides:

> In addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances. As used in this Article, the term hazardous or toxic substances shall not include electricity.

La.Civ.Code Ann. article 2315.3 (West Supp.1991).

The defendants, Norfolk Southern Corporation, CSX Transportation, Inc., Illinois Central Railroad Company, GATX Terminals, Inc., Phillips Petroleum Company, and Phillips 66 Company, General American Transportation Corporation, and Mitsui & Company (U.S.A.), Inc., filed motions to dismiss the plaintiffs' exemplary damages claims on the ground that article 2315.3 is unconstitutional. The defendants contend that article 2315.3 violates the Due Process and Equal Protection Clauses of the United States and Louisiana Constitutions.[1]

■ In accordance with 28 U.S.C. § 2403(b)[2], the Court certified to the Louisiana Attorney General that the defendants were attacking the constitutionality of a state statute, and permitted time for the State to submit briefs. In addition to the substantive grounds raised in opposition to the defendants' motions to dismiss, the Attorney General takes the position that it is premature for the Court to address the constitutionality of article 2315.3 until the defendants are determined liable under that section, and exemplary damages are assessed against them. The defendants in this case are not challenging the amount of a jury award, but the statute creating a cause of action for exemplary damages. Because the plaintiffs' cause of action is based on article 2315.3, it is not premature

---

1. The defendants cite the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, which apply to the states through the Fourteenth Amendment, and Article 1, Section 2 of the Louisiana State Constitution of 1974. Defendants also cite the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and Article 1, Section 3 of the Louisiana State Constitution of 1974.

2. Title 28, section 2403(b) provides in pertinent part:

> In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the questions of constitutionality.

to address the constitutionality of that statute.

In December, 1990, the Court denied the motions to dismiss, but withheld its reasons until the United States Supreme Court rendered a decision in *Pacific Mutual Life Ins. Co. v. Haslip*, 553 So.2d 537 (Ala.1989), *cert. granted*, —— U.S. ——, 110 S.Ct. 710, 107 L.Ed.2d 731 (1990). As *Pacific Mutual* was decided on March 4, 1991, *see* —— U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the Court now renders the following reasons upholding article 2315.3 under both the federal and state constitutions.

## I. DUE PROCESS

The defendants' claim that article 2315.3 violates due process of law due to a lack of notice to potential offenders and standardless enforcement.[3] This is essentially a void-for-vagueness argument. Specifically, the defendants argue that article 2315.3 violates due process because it provides no substantive standards or procedural guidelines to aid the jury in fairly assessing exemplary damages, it imposes no limit on the amount of exemplary damages that a jury can award, and the proscribed conduct is so vague that it fails to provide notice to potential offenders. In addition, the defendants argue that because of the quasi-criminal nature of exemplary damages, the statute violates due process by not incorporating a clear and convincing burden of proof. The defendants further argue that article 2315.3 violates fundamental fairness because it exposes a carrier of hazardous materials to punitive liability notwithstanding the carrier's compliance with all rules, regulations, orders, and standards promulgated by the Secretary of Transportation of the United States for the transportation of hazardous materials in interstate commerce.

### A. Void-for-vagueness

█ The void-for-vagueness doctrine requires that a statute be sufficiently definite so that it gives ordinary people adequate warning of the proscribed conduct and provides sufficient guidance to judges and juries so that they can fairly administer the law. *See Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). The strictness of the vagueness test depends upon whether the enactment: (1) is an economic regulation; (2) imposes civil or criminal penalties; (3) contains a scienter requirement; and (4) threatens to inhibit the exercise of constitutionally protected rights. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99, 499, 102 S.Ct. 1186, 1193–94, 71 L.Ed.2d 362 (1982).

[E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.

Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.

*Id.* (footnotes omitted).

█ Article 2315.3 is a social and economic regulation of constitutionally unprotected conduct. The statute imposes civil

---

**3.** There is no argument that the due process analysis under the Due Process Clause of Article 1, Section 2 of the Louisiana State Constitution of 1974 is different from the federal analysis under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

exemplary damages, which are penal in nature, but do not approach the severity of criminal penalties. *See Browning–Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). However, exemplary damages "have been described as quasi-criminal." *See Pacific Mutual Life Ins. Co. v. Haslip,* —— U.S. ——, 111 S.Ct. 1032, 1044, 113 L.Ed.2d 1 (1991) (citing *Smith v. Wade,* 461 U.S. 30, 59, 103 S.Ct. 1625, 1641, 75 L.Ed.2d 632 (1983) (Rehnquist, J., dissenting)). A law which imposes only civil penalties may warrant a strict test if the law is quasi-criminal, and has a prohibitory and stigmatizing effect. *See Hoffman Estates,* 455 U.S. at 499–500, 102 S.Ct. at 1194. Erring on the side of caution, the Court will apply a strict test: article 2315.3 will sustain the due process challenge only "if the enactment is impermissibly vague in *all* of its applications." *See United States v. Clinical Leasing Service, Inc.,* 925 F.2d 120, 122 (5th Cir.1991) (quoting *Hoffman Estates,* 455 U.S. at 494–95, 102 S.Ct. at 1191) (applying this strict test to a federal statute authorizing civil penalties against persons who distribute controlled substances without registration.)

■ There are limits to the degree of exactitude required of a statute.

[I]t is not a test for the constitutionality of a statute that it be so unambiguous that all judges will read the statute in only one way.... Indeed, if every statute were so clear as to permit only one reading, judicial interpretation would never be necessary.

. . . . .

A statute so vague as to have no predictable meaning is void for vagueness. But this doctrine does not ordain the unconstitutionality of a statute that two lawyers may read differently, nor does it mean that persons subject to the law may bank against startling or inconsistent decisions.

. . . . .

[N]either absolute uniformity of interpretation, nor total absence of ambiguity is semantically or practically achievable—

or, it necessarily follows—constitutionally required.

*Franklin v. First Money, Inc.,* 427 F.Supp. 66, 69–70 (E.D.La.1976), *aff'd,* 599 F.2d 615 (5th Cir.1979) (citations omitted).

■ By these standards, article 2315.3 withstands the defendants' attack. The statute carefully defines the conduct that warrants exemplary damages. It provides for exemplary damages where the defendant's "wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances" caused the plaintiff's injuries. *See* La.Civ.Code Ann. art. 2315.3 (West Supp.1991). Thus, the statute puts these persons on notice of the conduct that may expose them to liability for exemplary damages.

Obviously, it is not possible for the legislature to foresee and describe every type of factual variation in conduct that may be deemed storage, handling, and transportation, or to designate the various different means by which the statute is violated. *See United States Civil Service Comm'n v. National Ass'n of Letter Carriers AFL–CIO,* 413 U.S. 548, 578, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973) ("there are limitations in the English language with respect to being both specific and manageably brief"). That is where judicial interpretation comes into play, and varying interpretations by laymen, lawyers, and judges does not mean the statute is unconstitutionally vague. *See Franklin,* 427 F.Supp. at 69. The statutory phrase "wanton or reckless" and the terms "storage", "handling", and "transportation" have well-established meanings, and are sufficiently clear to persons of ordinary intelligence to give fair notice of the proscribed conduct. The defendants have cited no examples where these commonly used terms have been found to be unconstitutionally vague. As the statute clearly applies at least to some conduct, and is not unclear in *all* of its applications, the statute is not unconstitutionally vague for lack of notice to potential offenders.

Likewise, article 2315.3 is not unconstitutionally vague for lack of guidance to the

jury. Article 2315.3 requires the factfinder to apply a wanton or reckless standard for the imposition of exemplary damages. As stated, the phrase "wanton or reckless" has a well-established meaning, and it is capable of application in an even-handed manner. In addition, the jury instructions will explain the phrase "wanton or reckless" in accordance with Louisiana law. The statutory standard and the jury instructions give a jury adequate guidance in determining whether a defendant is liable for exemplary damages.

Defendants refer to concurring opinions from two recent United States Supreme Court cases indicating in dicta that due process may be violated in cases of unlimited jury discretion in assessing an amount of exemplary damages. *See Browning–Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 280–81, 109 S.Ct. 2909, 2923, 106 L.Ed.2d 219 (1989) (Brennan, J., concurring); *Bankers Life & Casualty Co. v. Crenshaw*, 486 U.S. 71, 86–90, 108 S.Ct. 1645, 1655–56, 100 L.Ed.2d 62 (1988) (O'Connor, J., concurring in part and dissenting in part).[4] Since the *Browning–Ferris* and *Bankers Life* decisions, the United States Supreme Court decided *Pacific Mutual Ins. Co. v. Haslip*, — U.S. —, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). In *Pacific Mutual,* the Supreme Court addressed whether the exemplary damage award in that case violated due process. The Court stated that while "unlimited jury discretion ... may invite extreme results that jar one's constitutional sensibilities, ... [w]e need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case. We can say, however, that general concerns of reasonableness and adequate guidance from the court when the case is tried to a jury properly enter into the constitutional calculus." *Id.* — U.S. at ——, 111 S.Ct. at 1043. The Supreme Court upheld the constitutionality of the exemplary damage award on the ground that the jury instructions gave meaningful guidance and reasonable restraints, and the post-trial review procedures served as an additional check on jury discretion. Although the Court in *Pacific Mutual* was reviewing the constitutionality of a punitive damage award as opposed to the constitutionality of a statute, in both *Pacific Mutual* and the case at bar, the due process concern is that jury's discretion in awarding punitive damages may result in arbitrary application of the law.

■ Louisiana law gives a jury "much discretion" in assessing an amount of punitive damages, *see* La.Civ.Code Ann. art. 2324.1 (West Supp.1991)[5], but that discretion is not unlimited. The jury is instructed that the purpose of punitive damages is to punish the wrongdoer and deter the kind of conduct involved. They are also instructed that in setting an amount of punitive damages, they may consider the nature and extent of harm to the plaintiff, the wealth or financial situation of the defendant, and the extent to which defendant's conduct offends a sense of justice and propriety. *See Griffin v. Tenneco Oil Company,* No. 51–145 Division "B" (Thirty-Fourth Judicial District Court, Parish of St. Bernard, La.) (jury instructions Jan. 11, 1990 and Dec. 12, 1990); *Demarest v. Progressive American Insurance Company,* 552 So.2d 1329, 1334 (La.App. 5th Cir.1989); *Levet v. Calais & Sons, Inc.,* 514 So.2d 153, 159 n. 5 (La.App. 5th Cir.1987)[6]. This is

---

**4.** Neither the *Browning–Ferris* nor the *Bankers Life* opinion reached the due process issue because the it was not properly raised. *See Browning–Ferris,* 492 U.S. at 276–78, 109 S.Ct. at 2921; *Bankers Life,* 486 U.S. at 79–80, 108 S.Ct. at 1651.

**5.** Louisiana Civil Code article 2324.1 provides that "[i]n the assessment of damages in cases of offenses, quasi-offenses, and quasi-contracts, much discretion must be left to the judge or jury."

**6.** Both *Demarest* and *Levet* involved a claim for punitive damages under a different statute, Louisiana Civil Code article 2315.4, which provides for punitive damages in the context of driving while intoxicated. The jury instructions on punitive damages in these cases are relevant because article 2315.4 includes the same statutory standard of conduct "wanton or reckless":

In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless

sufficient guidance to assess an amount of exemplary damages in an even-handed manner.

The discretion given to juries serves a deterrent purpose. Any sort of monetary limit or mathematical formula would defeat that purpose, particularly where a defendant could calculate the risks not to take safer, but more expensive measures. In the event that a jury acts out of passion, prejudice, or caprice, or awards exemplary damages which are not supported by the evidence, the defendants have the protection of judicial review and procedural remedies, including remittitur, new trial, and appeal. *See Pacific Mutual,* —— U.S. at ——, 111 S.Ct. at 1044–46; *see also Gregg v. Georgia,* 428 U.S. 153, 198, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859 (1976) (appellate review of imposition of death penalty found to be an important safeguard against jury discretion run amok). Accordingly, the Court finds that the jury's discretion to assess exemplary damages under article 2315.3 does not offend the requirements of due process.

### B. Burden of Proof

■ The defendants argue that article 2315.3 violates due process for failing to incorporate a clear and convincing standard of proof. They maintain that because exemplary damages are penal in nature, a finding of punitive liability must be predicated on this heightened standard of proof.

■ The burden of proof is a substantive issue governed by state law in a diversity case such as this. *See Browning–Ferris,* 492 U.S. at 278–80, 109 S.Ct. at 2922; *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); 9 C. Wright and A. Miller, *Federal Practice & Procedure* § 2409 at 337 (1971).

■ Admittedly, exemplary damages have only recently been allowed in Louisiana, and the case law interpreting article 2315.3 is sparse. In fact, there are no Louisiana cases which specifically discuss the appropriate burden of proof for exemplary damages. However, the Court is aware of at least three cases where the trial court instructed the jury that the burden of proof for exemplary damages under Louisiana law is by a preponderance of the evidence. *See Griffin v. Tenneco Oil Company,* No. 51–145 Division "B" (Thirty–Fourth Judicial District Court, Parish of St. Bernard, La.) (jury instructions Jan. 11, 1990 and Dec. 12, 1990); *Demarest v. Progressive American Ins. Co.,* No. 331–424 c/w 331–754 c/w 334–019 Division "C" (Twenty–Fourth Judicial District Court, Parish of Jefferson, La.) (jury instructions Nov. 2, 1988), *aff'd,* 552 So.2d 1329 (La. App. 5th Cir.1989); *Levet v. Calais & Sons, Inc.,* No. 17033 (Twenty–Third Judicial District Court, Parish of St. James, La.) (jury instructions July 29, 1986), *aff'd,* 514 So.2d at 153 (La.App. 5th Cir.1987).[7] This is in accordance with the general rule in civil cases that a party having the burden of proof must establish its case by a preponderance of the evidence. The Court is unaware of any authority that failure to include the burden of proof in a statutory cause of action or remedy, violates due process. Indeed, none of the Louisiana Civil Code articles on tort liability incorporate a burden of proof. *See* La.Civ.Code Ann. articles 2315–2324.2 (West 1979 & Supp.1991).

The defendants' argument that a heightened burden of proof should apply to exemplary damages is not without merit, as shown by recent legislative enactments in other jurisdictions[8], but it is not the law in

---

disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.
La.Civ.Code Ann. art. 2315.4 (West Supp.1991).

**7.** *See* discussion *supra* note 6.

**8.** States that have raised the burden of proof to clear and convincing evidence are Alabama, Alaska, California, Georgia, Iowa, Kansas, Ken-

tucky, Minnesota, Ohio, Oregon, South Dakota, and Utah. *See* Ala.Code § 6–11–20(a) (Supp. 1989); Alaska Stat. § 09.17.020 (Supp.1989); Cal.Civ.Code § 3294(a) (West Supp.1990); Ga. Code Ann. § 51–12–5.1(b) (Supp.1989); Iowa Code Ann. § 668A.1 (West 1987); Kan.Stat.Ann. § 60–3701(c) (Supp.1989); Ky.Rev.Stat.Ann. § 411.184(2) (Michie/Bobbs–Merrill 1988); Minn.Stat. § 549.20(1) (1988); Ohio Rev.Code Ann. § 2315.21(C)(3) (Anderson Supp.1988); Or. Rev.Stat. § 41.315(1) (1988); S.D. Codified Laws

Louisiana. Until the Louisiana legislature takes action to raise the burden, the law is that the burden of proof for exemplary damages is by a preponderance of the evidence.

The United States Supreme Court recently held in *Pacific Mutual,* that a standard of proof of exemplary damages by a preponderance of the evidence satisfies due process:

> "We have considered the arguments raised by Pacific Mutual and some of its amici as to the constitutional necessity of imposing a standard of proof of punitive damages higher than "preponderance of the evidence." There is much to be said in favor of a State's requiring, as many do, see, e.g., Ohio Rev.Code Ann. § 2307.80 (1989), a standard of "clear and convincing evidence" or, even, "beyond a reasonable doubt," see Colo.Rev. Stat. § 13–25–127(2) (Supp.1979), as in the criminal context. We are not persuaded, however, that the Due Process Clause requires that much. We feel that the lesser standard prevailing in Alabama—"reasonably satisfied from the evidence"—when buttressed, as it is, by the procedural and substantive protections outlined above, is constitutionally sufficient."

*Pacific Mutual,* —— U.S. at ——, 111 S.Ct. at 1046 n. 11. *See also Simpson v. Pittsburgh Corning Corp.,* 901 F.2d 277, 282 (2d Cir.), *cert. dismissed,* —— U.S. ——, 111 S.Ct. 27, 111 L.Ed.2d 840 (1990) (due process does not require an award of punitive damages to be supported by clear and convincing evidence). Therefore, article 2315.3 does not violate due process for not imposing a clear and convincing burden of proof.

C. Federal Regulations, Orders, and Standards for Transportation of Hazardous Materials in Interstate Commerce

 The defendants argue that article 2315.3 is unconstitutional in application because it establishes standards and duties with respect to the transportation of haz-

ardous materials in interstate commerce which are inconsistent with the regulations, standards, and orders created by the Secretary of Transportation of the United States. The defendants only touched upon this issue briefly stating that the alleged inconsistency violates fundamental fairness, without identifying any specific federal regulation or citing any legal authority in support of their argument. The fact that a carrier must comply with federal regulations does not mean that the fulfillment of its regulatory duties precludes it from tort liability. If it can be said that article 2315.3 creates a standard or duty, it is to store, handle, and transport hazardous substances in a manner that is neither wanton nor reckless. Although the defendants have not cited any federal regulations, it is inconceivable that federal law would condone wanton or reckless conduct. Therefore, the Court finds the defendants' argument without merit.

## II. EQUAL PROTECTION

The defendants argue that Article 2315.3 violates the constitutional guarantee of equal protection of the law. Because the equal protection analysis under the Fourteenth Amendment of the United States Constitution is different from the analysis under the Louisiana Constitution, *see Sibley v. Bd. of Supervisors of La. State Univ.,* 477 So.2d 1094, 1104–07 (La.1985), the defendants' claim under each constitution is addressed separately.

A. Fourteenth Amendment of the United States Constitution

 The defendants contend that Article 2315.3 violates the Equal Protection Clause of the Fourteenth Amendment because it unreasonably and arbitrarily treats storers, handlers, and transporters differently from other persons associated with hazardous substances. Essentially, the defendants argue that article 2315.3 is under-inclusive.[9]

Ann. § 21–1–4.1 (1987); Utah Code Ann. § 78–18–1(1)(a) (Supp.1989).

9. The defendants state that "[t]he statute excludes from its coverage a substantial class of

persons associated with hazardous materials, including generators and manufacturers of the materials, manufacturers and/or designers of the containers used to transport hazardous ma-

The analysis under the Equal Protection Clause of the United States Constitution focuses on the interests affected and the character of the classification. *See Dunn v. Blumstein,* 405 U.S. 330, 335, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1972). "Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions, such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976). If a legislative classification disadvantages a suspect class, or interferes with the exercise of a fundamental right, strict judicial scrutiny applies: the classification must be "precisely tailored to serve a compelling governmental interest." *Plyler v. Doe,* 457 U.S. 202, 216–17, 102 S.Ct. 2382, 2394–95, 72 L.Ed.2d 786 (1982). A suspect class is one which has been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." [10] *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973). Fundamental rights are those involving "basic civil rights of man." [11] *Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942). In limited circumstances where the legislative classification "while not facially invidious, nonetheless give[s] rise to recurring constitutional difficulties ... we have sought the assurance that the classification reflects a reasoned judgment consistent with the ideal of equal protection by inquiring whether it may fairly be viewed as furthering a substantial interest of the State." *Plyler,* 457 U.S. at 217–18, 102 S.Ct. at 2395.

In the case at bar, article 2315.3 does not involve rights traditionally regarded as fundamental, nor classifications traditionally regarded as suspect. *See Kotch v. Bd. of River Pilot Comm'rs,* 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947) (economic interests are not fundamental rights within the purview of the Equal Protection Clause). Therefore, strict scrutiny does not apply.

There is no authority to support the defendants' argument that because of the stigmata associated with exemplary damages, article 2315.3 should be reviewed under the heightened "substantial interest" standard.

This standard of review, which is less demanding than "strict scrutiny" but more demanding than the standard rational relation test, has generally been applied only in cases that involved discriminatory classifications based on sex or illegitimacy. *See, e.g., Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, [1914, 100 L.Ed.2d 465] (1988) [statute required actions to establish paternity of an illegitimate child be commenced within six years of child's birth]; *Mississippi University for Women v. Hogan,* 458 U.S.

---

terials, companies engaged in the service, maintenance, or repair of the containers used to transport the materials, or the equipment used to generate the product, and perhaps shippers of hazardous materials if the shipper interposes an intermediary to act as its agent." Defendants' Motion to Dismiss Exemplary Damage Count for Failure to State a Claim, page 31. Contrary to the defendants' position, the statute does not expressly exclude these persons. Whether the statutory language "storage, handling, or transportation of hazardous or toxic substances" would be judicially interpreted as excluding these persons need not be resolved here.

10. *See, e.g., Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (alienage); *Brown v. Bd. of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (race); *Takahashi v. Fish and Game Comm'n,* 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948) (national origin).

11. *See, e.g., Kramer v. Union Free School Dist.,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) (right to vote); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right of interstate travel); *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (right to vote and right to associate); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (right of marriage); *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (right to procreate).

718, 723–724, and n. 9, 102 S.Ct. 3331, 3336, and n. 9, 73 L.Ed.2d 1090 (1982) [statute excluded males from enrolling in a state-supported professional nursing school]; *Mills v. Habluetzel,* 456 U.S. 91, 101, and n. 8, 102 S.Ct. 1549, 1555–56, and n. 8, 71 L.Ed.2d 770 (1982) [statute required actions to establish paternity of illegitimate child be brought within one year of the child's birth]; *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 456–57, 50 L.Ed.2d 397 (1976) [statute required that males be older than females to purchase beer].

*Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 459, 108 S.Ct. 2481, 2487, 101 L.Ed.2d 399 (1988). This intermediate level of scrutiny also has been applied to a state statute denying children of illegal aliens free access to public schools. *See Plyler,* 457 U.S. at 218–24, 102 S.Ct. at 2395–2398. While recognizing that illegal aliens are not a suspect class, and education is not a fundamental right, the Court in *Plyler* found that the statute threatened to create an underclass of illiterate citizens at significant cost to the nation and the innocent children. *Id.,* 457 U.S. at 223–24, 102 S.Ct. at 2398. There is no logical analogy between innocents like illegitimates or children of illegal aliens, and defendants who might be stigmatized from a punitive damage award based on their wanton and reckless conduct. Even though the statute advances penal and remedial goals, it remains a civil statute and does not require the same safeguards applicable in criminal proceedings. *See Browning–Ferris,* 492 U.S. at 274–75, 109 S.Ct. at 2920. Accordingly, a heightened equal protection scrutiny of article 2315.3 is not warranted.

Article 2315.3 satisfies the Equal Protection Clause if it is rationally related to a legitimate state interest. The defendants have a heavy burden under this test because the statute is presumed rational and can only be overcome by a clear showing of arbitrariness and irrationality. *See Hodel v. Indiana,* 452 U.S. 314, 331–32, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981). "In the

area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality'." *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), (quoting *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)); *see also City of New Orleans,* 96 S.Ct. at 2517 ("the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines"). Applying this less strict standard, no equal protection violation occurred.

There are valid reasons justifying the enactment of article 2315.3. The state has a legitimate interest in seeing that wanton or reckless conduct in storing, handling, or transporting hazardous materials is subject to redress. The legislature rationally created liability for exemplary damages in this context to suppress business and industrial conduct that is injurious to the public welfare.[12] The classification drawn includes those who are in a position to take measures to protect against injury to the public and safeguard the hazardous materials. Therefore, the Court finds that the classifications contained in the statute have a rational basis in fact and are rationally related to the legitimate state interest of protecting the public from injury.

### B. Article 1, Section 3 of the Louisiana Constitution

The equal protection analysis for determining the validity of a state statute under the Louisiana Constitution is found in *Sibley v. Bd. of Supervisors of La. State Univ.,* 477 So.2d 1094 (La.1985). "In *Sibley,* the Louisiana Supreme Court recognized for the first time that Article 1,

12. *See* House Committee on Civil Law and Procedure, House Bill No. 501, Transcript of Committee Meeting, June 4, 1984.

**1104**

Section 3 of the 1974 Louisiana Constitution raises the threshold of equal protection and rejected the federal three level standard as a guide to deciding such challenges under the state constitution." *Bridley v. Alton Ochsner Medical Found. Hosp.*, 532 So.2d 905, 906 (La.App. 5th Cir, 1988). Article I, Section 3 of the Louisiana State Constitution of 1974 provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

The court in *Sibley* found, based on the legislative history and language of Article 1, Section 3, that:

Article 1, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest.

*Sibley*, 477 So.2d at 1107–08 (footnotes omitted).

The classification in article 2315.3 is based on a particular business or industry. It is not a classification based race or religion, nor on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations. Therefore, under *Sibley*, the defendants have the burden to show that the classification does not suitably fur-

ther any appropriate state interest. As stated in the above discussion on the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the classification in article 2315.3 furthers the legitimate state interest of protecting the public from injury from hazardous or toxic substances. Accordingly, the defendants have failed to show that article 2315.3 violates Article 1, Section 3 of the Louisiana Constitution.

### CONCLUSION

For the foregoing reasons, the Court finds that Article 2315.3 does not violate the Due Process or the Equal Protection Clauses of the United States and Louisiana Constitutions.

Accordingly,

IT IS ORDERED that:

1) The Motion of Defendants, Norfolk Southern Corporation, CSX Transportation, Inc., Illinois Central Railroad Company, GATX Terminals, Inc., Phillips Petroleum Company, and Phillips 66 Company, to Dismiss Exemplary Damage Count for Failure to state a Claim is DENIED;

2) The Motion of Defendants, General American Transportation Corporation and Mitsui & Company (U.S.A.), Inc. to Dismiss is DENIED.

New Orleans, Louisiana this 19th day of April, 1991.