Barbara ADDISON, et al.,

v.

**ILLINOIS CENTRAL RAILROAD CO., et al.**

**Civil Action No. 96–4142.**

United States District Court,
E.D. Louisiana.

April 4, 1997.

John J. Cummings, III, Frank Charles Dudenhefer, Jr., Cummings, Cummings & Dudenhefer, New Orleans, LA, Richard

Duane McShan, McShan Law Firm, Amite, LA, for Barbara Addison.

Lawrence Emerson Abbott, Patrice W. Oppenheim, Abbott, Simses, Album & Knister, New Orleans, LA, for Illinois Central R. Co.

Robert E. Barkley, Jr., Thomas E. Schwab, Nicholas Dale Doucet, Barkley & Thompson, New Orleans, LA, William V. Johnson, Frank P. Nowicki, Johnson & Bell, Ltd., Chicago, IL, for Union Tank Car Co.

Louis Charles LaCour, Jr., Thomas J. Wyllie, Jeffrey E. Richardson, Adams & Reese, New Orleans, LA, for ACF Indus. Inc.

Charles Morris Steen, Mark Charles Dodart, Neil Charles Abramson, Phelps, Dunbar, LLP, New Orleans, LA, for General American Transportation Corp.

## ORDER AND REASONS

DUVAL, District Judge.

Before the Court is a Motion to Remand filed on behalf of plaintiffs. Having reviewed the pleadings, memoranda, and the relevant law, the Court finds merit in the motion.

## BACKGROUND

On or about December 1, 1995, a freight train owned, organized and/or operated by the Illinois Central Railroad ("Illinois Central") was allegedly brought to a halt after numerous tank cars derailed and/or overturned in or around Tangipahoa, Louisiana. Some of the tank cars involved contained chlorine and acrylonitrile threatening the approximately 1,170 plaintiffs ("plaintiffs") with exposure.

On December 2, 1996, plaintiffs brought this suit against Illinois Central, Union Tank Car Company ("Union Tank"), ACF Industries, Inc. ("ACF") and General American Transportation Corp. ("GATC"). In the instant petition, plaintiffs bring suit pursuant to La.Civ.Code art. 2315.3 [1]. They allege that all defendants are liable, jointly and in solido, for compensatory and exemplary dam-

ages for exposure and/or risk of exposure to hazardous and noxious vapors. (Petition, ¶ V). Such exposure allegedly "includes possible eye, nose, and respiratory limitations which requires immediate and/or long-term medical care and attention." (Petition, ¶ VI). Plaintiffs also contend that they have "sustained injuries to their person, including psychological trauma, i.e., fear of exposure to hazardous and toxic materials, and inconvenience, i.e., being deprived of their ability to peacefully enjoy and occupy their homes and residences." (Petition ¶ VIII). With respect to the damages sought, the plaintiffs opine specifically that "these claims described hereinabove are less the FORTY–FIVE THOUSAND AND NO/100 DOLLARS($45,000.00) **inclusive of both compensatory and exemplary damages** but exclusive interest and cost." (Petition, ¶ XIV) (emphasis added). This position is repeated specifically in the ad damnum clause of the petition.

ACF timely removed this matter to this Court on December 23, 1996. All defendants joined in the removal. In the Notice of Removal, defendants contend that the matter is properly removed because "the claims of Plaintiffs must exceed $50,000." (Notice of Removal, ¶ 13). They based the removal on four contentions:

1. the recovery of damages is not restricted by the prayer and that the recitation of the value of the claims does not control for purposes of removal;

2. under *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir.1995), exemplary or punitive damages can be aggregated to meet the amount of punitive damages to meet the required jurisdictional amount;

3. because defendants have moved for consolidation of this suit with *Self, et al. v. Illinois Central Railroad. et al.*, C.A. No. 96–4141 and they have sought the conditional certification of that suit,

---

1. The Court notes that this article, which provided for punitive damages if plaintiff's injuries were caused by defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances, was repealed by 1996 La. Acts 2. Nonetheless because this accident occurred prior to the article's repeal, the cause of action remains viable herein.

the court could exercise jurisdiction because of the possibility of attorneys fees and supplemental jurisdiction over certain claims pursuant to 28 U.S.C. § 1367.

Plaintiffs have filed the instant motion seeking the remand of this case. They contend that:

1. the Court does not have subject matter jurisdiction because defendants have failed to show the existence of an amount in controversy in excess of $50,000; and

2. punitive damages cannot be aggregated so as to reach the jurisdictional amount; and

As they state in the body of their memorandum:

> Plaintiffs, in their state court Petition for Damages, have availed themselves of the provisions of LSA–C.C.P. Art. 893(A)(1) and have plead individual damages below the "in excess of $50,0000" threshold for diversity-based subject matter jurisdiction. By this motion for remand, they also represent under Rule 11 to this Court that their claims are individually worth less that (sic) the required amount in controversy. Accordingly, as a condition of remand, Plaintiffs request that the Court's remand Order contain language expressly limiting—under penalty of Rule 11—the damages which they may seek and recover to not more than $50,000 exclusive of costs and interest.

(Doc. 9, ¶ VII). In addition, they contend that *Allen* is only applicable to causes arising out of Mississippi law and should not be applied in this instance.

**2.** The Court recognizes that the jurisdictional amount for diversity was increased to $75,000; however, the change did not take effect until January 17, 1997, after this matter was removed. Therefore, for purposes of this analysis, the Court will use the $50,000 threshold.

**3.** In *Harrison v. Union Carbide Corp.*, 1995 WL 731672 (E.D.La. Dec.7, 1995) (Clement, J.), the court dealt with the "amount-in controversy" issue in the context of an alleged toxic emission from a Union Carbide plant in St. Charles Par-

## BURDEN OF PROOF—AMOUNT IN CONTROVERSY

Under 28 U.S.C. § 1441, any civil action may be removed from state court to federal courts where the federal courts have original jurisdiction. Diversity of citizenship provides such jurisdiction where the amount-in-controversy is more than $50,000.00 [2] and suit is between citizens of different states. There is no question that there is diversity with respect to the parties. The issue is whether the jurisdictional amount-in-controversy is met.

As noted above, plaintiffs have specifically alleged that each person's damages, including exemplary damages, is less than $45,000. However, the Court notes that under Louisiana law, this allegation "does not preclude plaintiffs from recovering a larger sum than they seek in their complaints." *Kliebert v. Upjohn Co.*, 915 F.2d 142, 147 (5th Cir.1990), *vacated by granting reh'g en banc*, 923 F.2d 47 (5th Cir.1991), *appeal dismissed by joint stipulation settlement*, 947 F.2d 736 (5th Cir.1991). Thus, where an exact amount has be pled:

> if a defendant can prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount, removal is proper unless the plaintiff shows that at the time of removal he was legally certain not to be able to recover that amount.... In other words, where the plaintiff's claims can be proved to be of the type that are worth more than $50,000, they can be removed unless the plaintiff can show he is legally bound to accept less.

*Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 n. 11 *citing De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 180, 133 L.Ed.2d 119 (1995) (rule necessitated to avoid manipulation) (*De Aguilar II*).[3] The

ish. The court, faced with four petitions, some styled class actions, and others apparently not, grappled with a similar factual scenario—that is no "specific" amount was pled in each petition. Instead some petitions alleged a "cap"; in others, there was no allegation of amount sought. That court chose to characterize them all as "not having alleged a specific amount." In so doing, it relied on the rule in *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir.1993) (*"De Aguilar I"*), stating "[wh]en the plaintiff's complaint does not

court in discussing this examination stated as follows:

> We emphasize that this is not a burden-shifting exercise. In light of *St. Paul Mercury [Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ], plaintiff must make all information known at the time he files the complaint.

> Plaintiff's "legal certainty" obligation might be met in various ways; we can only speculate, without intimating how we might rule in such cases. Plaintiff's state complaint might cite, for example, to a state law that prohibits recovery of damages that exceed those requested in the *ad damnum* clause and that prohibits the initial *ad damnum* to be increased by amendment. Absent such a statute, "[l]itigants who want to prevent removal must file a binding stipulation or affidavit with their complaints; once a defendant has removed the case, *St. Paul* makes later filings irrelevant." *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir.1992) (per curiam).

*De Aguilar II* at 1412.

■ The Court has reviewed the pleadings and the memoranda filed and it finds that the defendants have failed to prove by a preponderance of the evidence that the amount in controversy meets or exceeds the jurisdictional amount-in-controversy required. Reviewing the allegations in the petition and having heard the arguments of counsel at oral argument, plaintiffs' claims center on "fear of exposure." Such claims simply do not reach $50,000; generally, these claims will result in awards of around $3000 to $10,000. *See Cooper v. Koch Pipeline, Inc.*, C.A. No. 95–2373, 1995 WL 931091 (E.D.La. Dec. 11, 1995); *Harrison v. Union Carbide*

*Corp.*, C.A. No. 95–1316, 1995 WL 731672 (E.D.La. Dec. 7, 1995).

Furthermore, the cases cited to the Court to support defendants' claims that these plaintiffs will more probably than not recover more than $50,000 are totally inapposite. In *Smith v. Two "R" Drilling Co., Inc.*, 606 So.2d 804 (La.App. 4th Cir.1992), the plaintiff was in close contact with the debilitating toxic fumes and was rendered totally disabled. Plaintiffs here do not make any contentions of permanent disability. Rather they allege possible eye, nose, and respiratory limitations that require some type of medical care. *Rowsey v. Jones*, No. 26,823 (La. App. 2 Cir. 5/10/1995) 655 So.2d 560, is even further removed factually from this case and is equally inapposite. Thus, defendants have not met their burden of showing that any plaintiffs' recovery is more likely than not going to be more that $50,000.00. So the Court will turn to defendants' second argument.

## CAN THE AGGREGATE OF THE PUNITIVE DAMAGES ALLEGED BE COUNTED AGAINST EACH PLAINTIFF?

### *The Allen Decision*

Defendants maintain that based on *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir.1995), punitive damages should be aggregated in order to determine whether the amount-in-controversy limitation has been met. In *Allen*, a petition with 512 plaintiffs [4] asserting a state-law tort claim had been removed to federal district court. Plaintiffs moved to remand the matter, which motion was denied by the district court. That court aggregated plaintiffs' claim for punitive dam-

---

allege a specific amount of damages, as these do not, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $50,000." *Harrison*, p. 1. However, in *De Aguilar II*, the Fifth Circuit in commenting on a case where a "cap" was alleged stated as follows:

Indeed strictly speaking, plaintiffs have not alleged a specific amount of damages, as the amount they claim can range from $1 to $50,-000. We will treat the claim, however, as one for a specific amount of damages. Plaintiffs have labored to specify one "magic" number in

their complaint, i.e. $50,000. We regard such a complaint as more like a claim for one sum rather than a claim for an unlimited or an unspecified amount of damages; to reason otherwise would put form over substance. As a functional matter, plaintiffs are attempting to avoid federal jurisdiction. This goal is the same whether they pick a number such as $49,999 or merely announce a ceiling that conveniently, is barely within the statutory limit. *De Aguilar II*, 47 F.3d at 1408.

4. The matter was *not* brought as a class action.

ages as a "whole" to reach the $50,000.01 amount-in-controversy requirement for each plaintiff. Plaintiffs appealed and the appellate court affirmed.

The Fifth Circuit's analysis of this issue began with a review of the Supreme Court's interpretation of § 1332's phrase "matter in controversy." As noted, "[t]he general rule is that each plaintiff who invokes diversity of citizenship jurisdiction must allege damages that meet the dollar requirement of § 1332." [5] However, "aggregation" of damages allegedly owed to separate plaintiffs may be permitted where " 'two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest.' " *Id.* at 1330 (citation omitted). Such damages must arise from the same legal source in order to be integrated and thus create one right of recovery. Accordingly, "a necessary first step is an examination of the configuration of the state-law right at issue." *Id.* at 1331.

### A. Examination of the "Configuration" of State Law Claim

Indices that the appellate court used to determine whether the state law claim creates one right of recovery included (1) whether the award is to benefit or compensate the injured party or to punish the wrongdoer for his failure to regard the rights of the public. If the award is to compensate the injured party, it is not collective in nature. If the award is to "punish and compel the wrongdoer" then such an award is fundamentally collective. "Their [punitive damages'] purpose is to protect society by punishing and deterring wrongdoing." *Id.* at 1333.

Another inquiry focused on (2) whether the amount of damages is tailored to the wealth of the wrongdoer or whether the harm to plaintiff plays into the equation. The appellate court noted that in the context of Mississippi law, the focus "is not any one individual plaintiff; instead, the award is tailored to the defendant's wealth and wrongdoing." *Id.* The court reasoned that because the dam-

ages were not compensatory, punitive damages were "individual awards in function only." Thus, it concluded that "[a]n individual's damages or harm is relevant only to assessing the defendant's wrongdoing."

Finally, with respect to assessing punitive damages, the focus was (3) whether a plaintiff would have a "claim of right" to punitive damages. The court noted that:

> the general rule is that a plaintiff does not have a claim of right to punitive damages, and "it is always within the discretion of the jury or trial judge to withhold them." ... In other words, a claim for punitive damages is not by itself an independent tort. Hence, it is only because of the unique nature of these exemplary awards that they exhibit some of the characteristics of a separate claim of right.

*Id.* (citations and footnotes omitted).

The Fifth Circuit then stated that even though punitive damages does not clearly fall in the "non-aggregation" case law or the "common and undivided interest" exception:

> the unique nature of these awards requires, at least in Mississippi, that the full amount of alleged damages be counted against each plaintiff in determining the jurisdictional amount. As punitive damages are collective awards, each plaintiff has an integrated right to the full amount of an award. An award's ultimate distribution does not change this result.

Thus, the appellate court turned to examine the second major factor—plaintiff's interest in the ultimate distribution of the award. The initial finding of a "collective claim" is not changed if the defendant has little or no interest in the apportionment of an award among the plaintiffs. *Id.* at 1333.

### B. Interest in Apportionment of Claim

The appellate court began its examination with the statement, "Punitive damages are, to use the language of the case law, undivided claims of right with a potentially separable award." [6] *Id.* at 1334. The court rea-

---

5. This general proposition has been overruled to a limited degree in the class action context in *Free v. Abbott Labs. (In re Abbott Labs.),* 51 F.3d 524 (5th Cir.1995).

6. It is interesting to note that immediately before this statement, the appellate court commented that punitive damages are not a "claim of right." This inconsistency apparently is without effect.

soned that the fact that a group of plaintiffs choose not to pursue their claims individually does not limit their respective entitlement to the award, it only effects its distribution. Thus, "the limiting factor here was the plaintiffs' decision to file jointly." *Id.* The court then characterized the dichotomy presented with respect to a punitive award between where a group of individuals join and file one suit and where individual plaintiffs file multiple individual suits as follows:

> Of course, a defendant's interest in seeing individual plaintiffs' cases fail is greatly affected by the procedural posture of such claims. In class actions or multi-plaintiff suits, the defendant's potential exposure to a large punitive damage award is not affected by the failure of individual claims as long as one plaintiff is successful. Accordingly, in that situation, the defendant has no interest in the distribution of the award, a fact that has long supported the conclusion that the plaintiff's claims of right are common and undivided.

*   *   *   *   *   *

> Where a defendant faces a series of individual claims, it is affected strongly by the success or failure of each individual claim for punitive damages, because the general rule is that previous awards are not a limiting factor on subsequent awards. **We thus recognize that while plaintiffs generally share an undivided interest in being awarded punitive damages, that interest is not common in the sense that there is one and only one award that they would split equally.**

> **Nonetheless, we do not find that the potential for multiple liability makes the plaintiffs' claims separate.** The seeming anomaly of multiple exposures for punitive damages arising out of the same conduct is justified because of its extreme potential to punish and deter ... Such a harsh, and to some absurd, result is "tolerated as a price of private achievement of a public goal," not because it provides a windfall to individual plaintiffs ... The award is not the plaintiffs' but society's.

The 5th Circuit then concluded as follows:

> Finally, under the accepted view of punitive damages as a public good, no aggregation—meaning the addition of separate claims—is necessary, as each plaintiff's share of an award is not added up to exceed $50,000—just as one award does not subtract from a future claimant's entitlement. Instead, the claims, while jointly tried, are treated as belonging to each plaintiff for jurisdictional purposes. **In sum, because of the collective scope of punitive damages and their nature as individual claims under Mississippi law, we hold that under Mississippi law the amount of such an alleged award is counted against each plaintiff's required jurisdictional amount.**

*Id.* at 1334. With framework in mind, this Court will take up the issue presented—whether under Louisiana law, the punitive damages should be treated a unitary award to be counted against each plaintiff.

### What is the Nature of Punitive Damages Under Louisiana Law?

█ This Court has previously analyzed the issue of whether punitive damages can be aggregated to meet jurisdictional amount-in-controversy. It answered the question in the negative. *Joseph v. Shell Oil Co.*, No. 94–3005, 1994 WL 710674 (E.D.La. Dec. 19, 1994) (claim for punitive damages under Louisiana law was not common and undivided and/or amount was speculative). However, this decision was rendered before *Allen* issued and did not consider the factors noted in *Allen.* The appellate court specifically noted no less that three times in its original decision in *Allen* that the scope of its decision was limited to Mississippi law. Indeed in its order denying rehearing, the court stated:

> Although the panel members have some disagreement regarding the interpretation of Mississippi law, the panel is of the unanimous view that the opinion in this case specifically reflects a result under the Mississippi law of punitive damages and is not to be construed as a comment on any similar case that might arise under the law of any other state.

*Allen v. R & H Oil & Gas Co.*, 70 F.3d 26 (5th Cir.1995). Nonetheless, this Court believes that it must examine whether nature of Louisiana's punitive damages differs so

greatly from that of Mississippi that the *Allen* result would be inapplicable.

The Court notes that several other district courts have grappled with this question since *Allen*. Judge Clement in *Harrison v. Union Carbide Corp.*, C.A. No. 95–1316, 1995 WL 731672 (E.D.La. Dec.7, 1995) and Judge Fallon in *Cooper v. Koch Pipeline, Inc.*, C.A. No. 95–2373 (E.D.La. Dec. 11, 1995) both have refused to "aggregate" the punitive damage award so as to find a sufficient "amount-in-controversy" finding that Louisiana law is distinguishable from Mississippi law.[7]

### A. Are the Statutes Distinguishable on Their Respective Faces?

To begin, the general Mississippi statute providing for punitive damages and La.Civ. Code art. 2315.3, the specific article at issue herein, are substantially different. Section 11–1–65 of the Mississippi Code Annotated provides extremely specific instructions with respect to the awarding of punitive damages, including the **prerequisite** that the trier of fact must first award compensatory damages and the amount before the inquiry into an award for punitive damages commences. Only if the award of compensatory damages is made, can the court commence an evidentiary hearing before the same trier of fact to determine with respect to punitive damages. Furthermore, the court preliminarily determines whether the issue may be submitted to the trier of fact. The statute provides specifically as follows:

(1) In any action in which punitive damages are sought:

(a) Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

.    .    .    .    .

(e) In all cases involving an award of punitive damages, the fact finder, in determining the amount of punitive damages, shall consider, to the extent relevant, the following: the defendant's financial condition and net worth; the nature and reprehensibility of the defendant's wrongdoing, for example, the impact of the defendant's conduct on the plaintiff, or the relationship of the defendant to the plaintiff; the defendant's awareness of the amount of harm being cause and the defendant's motivation in causing such harm; the duration of the defendant's misconduct and whether the defendant attempted to conceal such misconduct; and any other circumstances shown by the evidence that bear on determining a proper amount of punitive damages. The trier of fact shall be instructed that the primary purpose of punitive damages is to punish the wrongdoer and deter similar misconduct in the future by the defendant and others while the purpose of compensatory damages is to make the plaintiff whole.

This provision does not apply to contracts, libel and slander, or causes of action for persons and property arising out of asbestos.

On the other hand, Louisiana does not have such an all encompassing provision for punitive damages. Indeed, until the advent of three code articles providing for punitive damages—La. Civ. Code arts. 2315.3, 2315.4 and 2315.7[8]—Louisiana's civilian tradition, which is inherently different from the common law, did not recognize punitive or exemplary damages, "since such savor more of punishment at criminal law than of reparation." Stone, 12 *Louisiana Civil Law Treatise*, § 12 at 22 (1977). *See* Massey & Stern,

---

7. Three other courts have found the *Allen* analysis compels "aggregation" in a Louisiana context: *Duhon v. Conoco, Inc.*, 937 F.Supp. 1216 (W.D.La.1996) (Trimble, J.); *Williams v. Monsanto Co.*, C.A. No. 93–4237, 1996 WL 162134 (E.D.La. April 4, 1996) (Mentz, J.); *Brooks v. Georgia Gulf Corp.*, 924 F.Supp. 739 (M.D.La. 1996). This court respectfully disagrees with the holdings in these cases for the reasons stated herein.

8. Articles 2315.3 and 2315.4 were enacted in 1984; article 2314.7 was enacted in 1993. Article 2315.4 concerns exemplary damages in the context of an intoxicated defendant and article 2315.7 concerns exemplary damages in the context of criminal sexual activity occurring during childhood.

*Punitive Damages and the Louisiana Constitution: Don't Leave Home Without It,* 56 La.L.Rev. 743, 768–70.

Nonetheless, repealed article 2315.3 provided in its entirety:

> In addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances. As used in this Article, the term hazardous or toxic substances shall not include electricity.

This statute and its purpose has been interpreted in various ways. In *Billiot v. B.P. Oil Co.,* Case No. 93–1118 (La.9/29/94) 645 So.2d 604, the court was confronted with the issue of whether this article operated outside of the Louisiana Workers' Compensation scheme. There, an employee sought punitive damages from an employer for injuries suffered in handling hazardous materials. The court found that workers' compensation law's exclusivity provisions **did not** preempt the application of the article in an employee-employer context. It further found that the award of exemplary damages **did not** depend upon a victim being able to establish a right to compensatory damages. It should be noted that this opinion was legislatively overruled in the following legislative session. Nonetheless, the Louisiana Supreme Court characterized La.Civ.Code art. 2315.3 as follows:

> (1) the article was not designed to repair the injuries of tort victims and

> (2) the purpose of the introductory clause of the statute is to establish the right to seek punitive damages as a legally enforceable claim for punitory damages over and above, separate and apart from the right to reparation or compensatory damages arising from the same facts ... Therefore, this interpretation of the introductory clause has the meaning that best conforms to the purpose of Article 2314.3 in providing incentives to victims, punishing designated wrongdoers, and deterring them and those who might follow their example.

*Id.* at 613. So the general gloss with respect to the "purpose" of the statute is to **punish**, not unlike Mississippi.

However, in 1989, in grappling with the issue of whether uninsured motorist coverage for an person injured by an intoxicated underinsured motorist covered punitive damages in the context of La.Civ.Code art. 2315.3, the Louisiana Court of Appeal for the First Circuit characterized punitive damages as follows:

> Although the purpose of punitive damages is to punish and deter, the injured party receives the benefit of such payment and, from the plaintiff's standpoint, punitive damages are additional compensation for the egregious conduct inflicted upon him.

*Sharp v. Daigre,* 545 So.2d 1063, 1065 (La. App. 1st Cir.1989), *aff'd,* 555 So.2d 1361 (La. 1990). As the court succinctly characterized La.Civ.Code art. 2315.3 in *Harrison:*

> Under Louisiana Civil Code, ..., a punitive damage award is clearly an individual award. It is usually determined by the designation of an appropriate ratio, with each plaintiff who recovers compensatory damages receiving some additional proportion of his award in punitive damages. *See Watson v. Shell Oil,* 979 F.2d 1014 (5th Cir.1992). The Code provision authorizing such damages speaks in terms of each "plaintiff's" injuries. La.Civ.Code art. 2315.3. This provision is widely regarded as creating a separate cause of action for punitive damages based on the injuries suffered by a plaintiff. *See, e.g., Galjour v. General American Tank Car Corp.,* 764 F.Supp. 1093, 1096 (E.D.La.1991) (referring to "Louisiana statute creating cause of action for exemplary damages"); *Young v. American Hoechst Corp.,* 527 So.2d 1102, 1103 (La.Ct.App. 1st Cir.1988) (same). Nowhere does any Louisiana Code article, statute or case provide that punitive damages should be regarded or treated as a collective or joint award.

*Harrison,* at 3. With these general observations in mind, the Court will now address specifically the factors enumerated in *Allen.*

## B. The "Configuration" of a Claim Under La.Civ.Code Art. 2315.3

The nature of a punitive damage claim under article 2315.3 differs significantly from that under Mississippi law. The first obvious distinction is that Louisiana's provision for such damages is severely circumscribed and is not a general statutory grant with limited exceptions as outlined above. This distinction is apparently based on Louisiana's civilian tradition which must be recognized.

■ With respect to (1) whether the purpose of the award benefits or compensates the injured party, as noted in the *Sharp* opinion, compensation is part of the calculation concerning punitive damages. Punitive damages in Louisiana are not solely to punish; they are considered compensation of sorts.

■ In analyzing (2) whether the award is tailored to the wealth of the wrongdoer or is the harm to the plaintiff the focus in assessing punitive damages, it is beyond peradventure that an award is tailored to the harm caused to the plaintiff under Louisiana law. An award for punitive damages must bear an "understandable relationship to compensatory damages." *Watson*, 979 F.2d at 1020. Even the wording of the statute itself and its focus on plaintiff's injuries in the statute underscores this approach. Again, the *Harrison* decision is most convincing in this regard.

Finally, with respect to (3) whether punitive damages are a "claim of right" and whether it is an independent tort, as this court has previously noted, the Fifth Circuit noted in *Allen* that the general rule is that a plaintiff does not have a claim of right to punitive damages because the jury or judge can withhold them. As such, the court reasoned that "a claim for punitive damages is not by itself an independent tort. Hence, it is only because of the unique nature of these exemplary awards that they exhibit some of the characteristics of a separate claim of right." *Allen* 63 F.3d at 1333.

In *Billiot*, 645 So.2d at 613 the Louisiana Supreme Court held that an award of exemplary damages does not depend upon a victim being able to establish a right to compensatory damages. This holding is diametrically opposed to the specific statute in Mississippi which requires as a prerequisite to the award of punitive damages, an award of compensatory damages. MS ST § 11–1–65(1)(c). Thus, this Court agrees with the court's characterization in the *Harrison* decision that La.Civ.Code art. 2315.3 is widely regarded as creating a separate cause of action for punitive damages based on the injuries suffered by a plaintiff. *See, e.g., Galjour v. General American Tank Car Corp.*, 764 F.Supp. 1093, 1096 (E.D.La.1991) (referring to "Louisiana statute creating cause of action for exemplary damages"); *Young v. American Hoechst Corp.*, 527 So.2d 1102, 1103 (La. Ct.App. 1st Cir.1988) (same).

## C. Interest in Apportionment of Claim

In *Allen*, the Fifth Circuit found that with respect to Mississippi law, that in class actions or multi-plaintiff suits, the defendant's potential exposure to a large punitive damage award is not affected by the failure of an individual claim. However, because under Louisiana law, a punitive damage award is tied to and must be proportionate to the harm caused, the *Allen* analysis is unavailing. This conclusion is further supported by *BMW of North America, Inc. v. Gore*, ―― U.S. ――, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). The Supreme Court there noted the importance of the ratio of an award of punitive damages to the actual harm inflicted on the plaintiff in the context of whether an award is unreasonable or excessive. *Id.* at ――, 116 S.Ct. at 1601.

■ The award of punitive damages in Louisiana is discrete to each plaintiff. An individual analysis must be made in determining the amount of each award. As stated, this analysis depends upon the harm suffered by the *individual* plaintiff. Therefore, certainly in Louisiana, a defendant is interested in the punitive damage award as to each plaintiff. There is not one homogenous fund that is then allocated, but a separate award to each plaintiff.

Based on the foregoing, the Court is unpersuaded that under Louisiana law, plaintiffs unite to enforce a single title or right in which they have a "common and undivided

interest." While arguably, the damages arise "from the same legal source" that is the "wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances," La. Civ.Code art. 2315.3, there is no "one right of recovery" in Louisiana. Therefore, there is not a sufficient "amount-in-controversy" present based on the punitive damages at issue to support this Court's jurisdiction and as such the motion to remand should be granted.

## CONDITIONAL CERTIFICATION AND SUPPLEMENTAL JURISDICTION

Defendants argue that there are other reasons that the Court has jurisdiction over this matter. First they argue that because they have moved to consolidate this case with *Self, et al. v. Illinois Central Railroad, et al.*, C.A. No. 96–4141 which was brought as a class action, the Court could exercise supplemental jurisdiction over the case under 28 U.S.C. § 1367 because of the potential for attorneys' fees in the class action context and because in *Self* a jury request was made indicating that the amount in controversy is met there with respect to the named plaintiff and thus supplementary jurisdiction could be had over the rest of the "consolidated" plaintiffs. The Court rejects this argument.

The Court believes that it must address its jurisdiction over **this** case as it stands. This case was filed by different counsel than those representing the plaintiffs in the *Self* matter. While there may be some confusion between counsel as to who represents the 43 individuals who apparently appear in both cases, in the Court's estimation, this situation does not provide reason to ignore the primary jurisdictional issue presented in *Addison*. Furthermore, from the analysis above with respect to the amount-in-controversy, the Court does not believe that any one of the named plaintiffs in the *Addison* matter reach the requisite amount such that supplemental jurisdiction could exist within the context of

9. Plaintiffs raise in one paragraph the proposition that the court should find jurisdiction because of the minors' claims involved herein and the allegation "that Plaintiffs' counsel have improperly attempted to waive the minors' claims

this case.[9] Finally, as this matter was not filed as a *class* action, *In re Abbott Laboratories*, 51 F.3d 524 (5th Cir.1995) is inapplicable.

## CONCLUSION

Based on the foregoing reasons, this Court finds that it does not have jurisdiction over this matter and must remand this case. Accordingly,

**IT IS ORDERED** pursuant to 28 U.S.C. § 1447(c) that the Motion to Remand is **GRANTED** and this case is **REMANDED** to the 21st Judicial District Court for the Parish of Tangipahoa, State of Louisiana.

over $45,000." Considering the circumstances of this accident and the total lack of proof presented that these "fear of exposure" claims could reach this amount, the Court rejects this argument as well.