**Charles BRYCELAND, et al., Plaintiffs,**

v.

**AT & T CORPORATION, et al., Defendants.**

Nos. 3–99–CV–2279–L, 3–00–CV–0084–L.

United States District Court, N.D. Texas, Dallas Division.

Nov. 27, 2000.

704

Robert Scott, Jonathan Scott, Dallas, TX, for Plaintiffs.

R.Laurence Macon, Akin, Gump, Struass, Hauer & Feld, San Antonio, TX, John Hendricks, Akin, Gump, Strauss, Hauer & Feld, Dallas, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

KAPLAN, United States Magistrate Judge.

Plaintiffs filed two class action lawsuits against AT & T Corporation and AT & T Wireless Services, Inc. ("AT & T"). One case was filed in federal court. The other was filed in state court. AT & T removed the state court action to federal court and the cases were consolidated. Plaintiffs now move to remand the state case. AT & T has filed a motion to dismiss both class action complaints. For the reasons stated herein, plaintiffs' motion to remand the state case is granted and the federal case is dismissed *sua sponte* for lack of subject matter jurisdiction.[1]

### I.

AT & T Wireless Services, Inc., a wholly owned subsidiary of AT & T Corporation,

---

1. The parties have consented to allow the magistrate judge to make final rulings on these motions pursuant to 28 U.S.C. § 636(c). *See* ORDER, 10/18/00.

is the largest digital wireless phone service carrier in the United States. (Plf.Compl.¶ 5). Digital wireless service allows telecommunications carriers to reach more customers at a lower cost than was possible with earlier analog wireless technology. (*Id.* ¶¶ 9, 25). AT & T began offering Digital PCS wireless service to customers in major metropolitan areas throughout the United States, including Dallas, in October 1996. According to plaintiffs, "AT & T encouraged its current wireless customers and new customers to switch to digital wireless service, although it knew, and did not disclose, the serious deficiencies of its digital wireless service." (*Id.*).

In May 1998, AT & T launched a new billing plan called Digital One Rate ("DOR"). Under this plan, customers could purchase a set block of air time for a flat monthly fee instead of paying for phone calls on a per-minute basis. Long distance and roaming charges were eliminated for calls made to or from anywhere in the United States within the allotted airtime. However, subscribers were required to purchase a specially designed digital wireless phone in order to access the DOR network. The plan has been wildly successful, attracting roughly 100,000 new customers each month since its inception. (*Id.* ¶¶ 10, 26). Plaintiffs are among the tens of thousands of Texas residents who enrolled in the DOR plan and purchased expensive, multi-network wireless phones required for use with the service. (*Id.* ¶¶ 14, 18).

This huge influx of new subscribers and corresponding increase in the volume of calls has apparently overtaxed the capabilities of the AT & T digital wireless network. (*Id.* ¶ 11). Among these problems are: (1) repeated involuntary disconnections, or "dropped" calls; (2) fast busy signals when attempting to connect with the service, or "blocked" calls; (3) lengthy waits before reestablishing connections; and (4) garbled and static-filled calls. (*Id.* ¶ 12). Plaintiffs allege that AT & T knew

or should have known, and failed to disclose, that its digital wireless network was not sufficiently developed to accommodate DOR subscribers. (*Id.* ¶ 13). As a result of these inadequacies, plaintiffs contend that the digital wireless service provided by AT & T is "grossly unreliable and frequently useless." (*Id.* ¶ 12).

On October 6, 1999, plaintiff filed a class action in federal district court on behalf of "all persons residing in Texas who subscribe or have subscribed to the digital wireless calling service offered by [AT & T] from October 2, 1996 to the present." (*Id.* ¶ 7). Plaintiffs assert claims for breach of contract, fraud, breach of warranty, and negligent misrepresentation. (*Id.* ¶¶ 8, 44–49, 50–56, 57–58, 59–64). They seek damages totaling $100 million and injunctive relief. (*Id.* ¶ 65). Two months after this lawsuit was filed, the same plaintiffs initiated a separate proceeding in state court. The state court action is virtually identical to the federal court suit, except for an additional claim under the Texas Deceptive Trade Practices Act. (Plf.Orig.Pet.¶¶ 68–81). AT & T timely removed the state action to federal court and the two cases were consolidated. *See* ORDER, 3/6/00.

AT & T now moves to dismiss both cases on the ground that plaintiffs' state law claims are preempted by the Federal Communications Act of 1934, 47 U.S.C. § 151, *et seq.* Alternatively, AT & T contends that plaintiffs have failed to state a claim upon which relief can be granted. Plaintiffs have filed a motion to remand the state court action because the amount in controversy is insufficient to satisfy the requirements of federal diversity jurisdiction and there is no basis for federal question jurisdiction. The parties have briefed the motions and presented arguments at a hearing on November 17, 2000. These matters are ripe for determination. Because the issue of subject matter jurisdiction must be determined at the outset of a case, the Court will consider plaintiff's motion to remand first. *See Steel Co. v.*

*Citizens for a Better Environment,* 523 U.S. 83, 101, 118 S.Ct. 1003, 1016, 140 L.Ed.2d 210 (1998) (federal court may not resolve contested issues of law when its jurisdiction is in doubt).

## II.

AT & T removed plaintiffs' state court action on the grounds of diversity of citizenship and federal question jurisdiction. Although plaintiffs did not plead a specific amount of damages in their state court petition, AT & T maintains that the amount in controversy clearly exceeds $75,000 because plaintiffs seek "$100 million in compensatory, nominal and punitive damages in their virtually identical, previously filed Federal Complaint." (Notice of Removal ¶ 10).[2] AT & T further contends that plaintiffs' state law claims are preempted by the Federal Communications Act and, as such, can be removed to federal court. (*Id.* ¶ 14). Plaintiff argues that removal is not proper under either theory and seeks an order remanding this case to state court.

### A.

■ A case may be removed to federal court if it is "founded on a claim or right arising under the Constitution, treaties or laws of the United States ..." 28 U.S.C. § 1441(b). The analysis of this statute is controlled by the well-pleaded complaint rule. This rule provides that a "properly pleaded complaint governs the jurisdictional determination and if, on its face, such a complaint contains no issue of federal law, then there is no federal question jurisdiction." *Aaron v. National Union Fire Insurance Co.,* 876 F.2d 1157, 1160–61 (5th Cir.1989), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990); *Flowerette v. Heartland Healthcare Center,* 903 F.Supp. 1042, 1044 (N.D.Tex.1995). Stated differently, removal if proper is the

complaint establishes: (1) that federal law creates the cause of action; or (2) that the case necessarily depends on a substantial question of federal law in that federal law is a necessary element of one of the well-pleaded claims. *Franchise Tax Board of State of California v. Construction Laborers Vacation Trust of Southern California,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983); *see also Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 808–09, 108 S.Ct. 2166, 2173–74, 100 L.Ed.2d 811 (1988). This determination must be based on the claims asserted by the plaintiff, "unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Franchise Tax Board,* 103 S.Ct. at 2846.

■ AT & T maintains that the state court action was properly removed to federal court because the claims asserted therein are preempted by the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. § 151, *et seq.* The FCA governs the licensing and regulation of "commercial mobile radio service providers" such as AT & T Wireless *See Connecticut Department of Public Utility Control v. FCC,* 78 F.3d 842, 845 (2d Cir.1996). In 1993, Congress revised the statutory system of licensing and regulating wireless telecommunications services in order "to promote rapid deployment of a wireless telecommunications infrastructure." *In re Petition of the Connecticut Department Public Utility Control to Retain Regulatory Control of the Rates of Wholesale Cellular Service Providers in the State of Connecticut,* 10 F.C.C. Rcd. 7025 ¶¶ 2, 10 (1995), *review denied,* 78 F.3d 842 (2d Cir.1996). To that end, Section 332 of the FCA was amended to expressly prohibit state and local governments from "regulat[ing] the entry of or the rates charged by any commercial

---

**2.** Where the state court petition does not specify an amount of damages, a federal court may look to the notice of removal to assist in its jurisdictional determination. *See Chapman v. Powermatic, Inc.,* 969 F.2d 160, 163 n.

6 (5th Cir.1992), *cert. denied,* 507 U.S. 967, 113 S.Ct. 1402, 122 L.Ed.2d 774 (1993), *citing* 14A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3725 at 426–27 (2d ed.1985).

mobile service or any private mobile service ..." Omnibus Budget Reconciliation Act of 1993, Pub. L No. 103–66, § 6002(b)(2)(A), 107 Stat. 312, 394 (1993), *codified at* 47 U.S.C. § 332(c)(3)(A). The plain language of this legislation manifests a clear Congressional intent to preempt the field with respect to rates and market entry.[3]

However, the mere fact that plaintiffs' claims may be preempted by federal law does not create federal removal jurisdiction. Ordinary or "conflict" preemption is nothing more than a defense to a plaintiff's state law claims and will not support removal under the well-pleaded complaint rule. *See McClelland v. Gronwaldt*, 155 F.3d 507, 516 (5th Cir.1998). Removal is proper only where a state law claim is completely preempted by federal law. Complete preemption exists when "Congress ... so completely preempt[s] a particular area, that any civil complaint raising that select group of claims is necessarily federal in character." *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). In such cases, "any complaint that comes within the scope of the federal cause of action [created by the federal statute] necessarily 'arises under' federal law" for purposes of removal based on federal question jurisdiction. *Franchise Tax Board*, 103 S.Ct. at 2854. When a claim is completely preempted, a plaintiff cannot avoid federal jurisdiction by "artful pleading." *See Federated De-*

*partment Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981); *Avitts v. Amoco Production Co.*, 53 F.3d 690, 693 (5th Cir.1995).

The doctrine of complete preemption is an extremely narrow corollary to the well-pleaded complaint rule. In order to establish complete preemption, a defendant must show that:

(1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law;

(2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and

(3) there is a clear Congressional intent that claims brought under federal law be removable.

*Johnson v. Baylor University*, 214 F.3d 630, 632 (5th Cir.2000), *pet. for cert. filed* (Sept. 20, 2000) (No. 00–451). As few statutes can meet these exacting standards, complete preemption has been clearly sanctioned only in the areas of federal labor relations and the Employee Retirement Income Security Act of 1974. *Id., citing Heimann v. National Elevator Industry Pension Fund*, 187 F.3d 493, 500 (5th Cir.1999).[4] The issue before the Court is whether the FCA meets these standards.

1.

The first question is whether the FCA contains a civil enforcement provision that

---

**3.** However, the preemptive effect of Section 332 is narrowly conceived. By its own terms, the statute preempts only state regulation of "the entry of or the rates charged by any commercial mobile service." States are not prohibited "from regulating other terms and conditions of commercial mobile services." 47 U.S.C. § 332(c)(3)(A). According to the House Committee that considered this legislation, "terms and conditions" includes:

[S]uch matters as customer billing information and practices and billing disputes and other consumer protections matters, facilities siting issues (e.g.zoning); transfers of control; the bundling of services and equipment; and the requirement that carriers

make capacity available on a wholesale basis or such other matters as fall within a state's lawful authority. This list is intended to be illustrative only and not meant to preclude other matters generally understood to fall under "terms and conditions." H.R.Rep. No. 103–111, 103d Cong., 1st Sess. 211, 261, *reprinted in* 1993 U.S.C.C.A.N. 378, 588.

**4.** Complete preemption also has been found in certain Indian land grant rights cases. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 54 (2d Cir.1998), *citing Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666–67, 94 S.Ct. 772, 776–77, 39 L.Ed.2d 73 (1974).

creates a cause of action that both replaces and protects the analogous area of state law. Section 201(b) of the FCA provides, in relevant part, that:

All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful ...

47 U.S.C. § 201(b). A violation of this provision subjects a common carrier to liability for damages. *Id.* § 206. Thus, it is clear that the FCA creates a cause of action against a carrier who charges unreasonable rates. *See, e.g. Ambassador Inc. v. U.S.*, 325 U.S. 317, 323, 65 S.Ct. 1151, 1154–55, 89 L.Ed. 1637 (1945); *Hi-Tech Furnace Systems, Inc. v. F.C.C.*, 224 F.3d 781, 790–91 (D.C.Cir.2000); *Southwestern Bell Telephone Co. v. F.C.C.*, 168 F.3d 1344, 1349 (D.C.Cir.1999).

Plaintiffs insist they are not challenging the rates AT & T charges for its services. Instead, plaintiffs maintain that their claims are based on false and misleading statements allegedly made by AT & T in promoting and advertising the DOR plan. (Plf.Orig.Pet.¶¶ 28, 30–32). *See Bauchelle v. AT & T Corp.*, 989 F.Supp. 636, 645 (D.N.J.1997) ("The [FCA] does not impose any duty on common carriers to be truthful in their promotional practices."). The Court must therefore examine the state court petition to determine whether plaintiffs' claims fall within the scope of the FCA.

Quoting from an AT & T press release dated May 7, 1998, plaintiffs allege that:

(a) Defendants' digital wireless network was not capable of providing, and did not provide, service to subscribers as advertised. Indeed, without informing Wireless's subscribers, Defendants have actually reduced the size and availability of AT & T's wireless network by ceasing to provide analog phone service, including, on information and belief, in areas where digital service is not available. As a consequence, some areas that are advertised as covered by AT & T's network actually are not.

(b) Defendants' wireless network was not, and continues not to be, available to subscribers in the areas that Defendants advertised as the wireless service coverage area; subscribers do not have 'unparalleled freedom' to make and receive calls through the digital service.

(c) The bills that Plaintiffs and the other Class members received created, rather than removed, 'uncertainty and concerns ... about ... surprise charges on their wireless bills,' because, in fact, Wireless charges for repeat calls that were necessitated by having been involuntarily disconnected, and further, prevents Plaintiffs and the other Class members from receiving credit for calls made as a result of having been involuntarily disconnected, by failing to provide them with access to the digital wireless phone network within 5 minutes after having been involuntarily disconnected.

(Plf.Orig.Pet.¶ 29). Plaintiffs further allege that statements contained in other advertising materials were false and misleading for the following reasons:

(a) Plaintiffs and the other Class members could not 'count on the reliability of the proven leader of wireless communications' because Defendants' wireless network was not capable of providing, and did not provide, service to the subscribers as advertised.

(b) The statement that 'the barriers, hurdles, obstacles, snags, hitches, limitations, misconceptions, vagaries, bewilderment and general &*&related to wireless calling) are [h]istory' fails to disclose that the wireless service would actually be unreliable, poor, and inadequate service.

(c) Plaintiffs and the other Class members could not consistently and reliably 'access ... the powerful North American Cellular Network,' nor could the [sic] consistently and reliably 'place and

receive calls in over 5,000 cities.' Defendants' wireless network was neither 'powerful' nor 'time-saving' nor 'easy to use.' It was not reliable or consistently available to subscribers in the areas that Defendants advertised as part of the wireless service coverage area.

(d) The bills that Plaintiffs and the other Class members received failed to credit for repeat calls that were necessitated by having been involuntarily disconnected, when the repeat call could be made within 5 minutes of the involuntary disconnection, and also charged subscribers for calls made as a result of the involuntary disconnection, where the subscriber could not reconnect to Defendants' wireless network within 5 minutes after having been so disconnected. Thus the service is not 'affordable' and 'easy to use,' but costly.

(*Id.* ¶ 35).

These allegations clearly implicate the quality of AT & T's services. A claim involving inadequate service is actually an attack on rates because it implies that the service was not worth what the customer paid for it. *See AT & T Co. v. Central Office Telephone, Inc.*, 524 U.S. 214, 223, 118 S.Ct. 1956, 1962, 141 L.Ed.2d 222 (1998) ("Rates, however, do not exist in isolation They have meaning only when one knows the services to which they are attached. Any claim for excessive rates can be couched as a claim for inadequate service and vice versa."). Plaintiffs' breach of contract and breach of warranty claims illustrate this point. According to plaintiffs, AT & T breached its contract with subscribers to the DOR plan because it "failed to provide the services promised ..." (Plf. Compl. ¶ 48; Plf. Orig. Pet. ¶ 50). Plaintiffs further allege that the service provided by AT & T "was not of good quality," "did not have appropriate characteristics for its intended use," "was not merchantable," "was not readily available or of good quality in the advertised geographic areas," and "did not have good and durable qualities characteristics [sic]."

(Plf.Orig.Pet.¶ 61). Although plaintiffs' fraud, negligent misrepresentation, and DTPA claims present a slightly closer question, these claims also implicate the quality of AT & T's services and infrastructure. (*Id.* ¶¶ 71–80). As such, the claims are an attack on rates. *See Central Office Telephone*, 118 S.Ct. at 1964–65.

The Court concludes that the FCA creates a cause of action that both replaces the state law claims asserted by plaintiffs and protects the same rights. This satisfies the first prong of the complete preemption test.

### 2.

The next question is whether there is a specific jurisdictional grant to the federal courts for enforcement of rights created by the FCA. This element of the test is easily met. Section 207 of the FCA provides:

Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both remedies.

47 U.S.C. § 207. Thus, a federal district court has jurisdiction to enforce claims brought under the FCA.

### 3.

The final inquiry is whether Congress clearly intended that claims brought under the FCA be removable. At oral argument, AT & T suggested that such intent can be inferred where the statute at issue creates exclusive federal jurisdiction and the claims are otherwise preempted. This is not the law. A claim is not removable even when preemption is "obvious." *See Metropolitan Life*, 107 S.Ct. at 1548, 107 S.Ct. 1542. The language of the statute or legislative history must affirmatively indi-

cate that Congress intended to create removal jurisdiction. *See Railway Labor Executives Association v. Pittsburgh & Lake Erie Railroad Co.*, 858 F.2d 936, 942 (3d Cir.1988); *Aronson v. Sprint Spectrum, L.P.*, 90 F.Supp.2d 662, 667 (W.D.Pa.2000); *Bauchelle*, 989 F.Supp. at 646.[5]

A careful reading of the FCA reveals no indicia of congressional intent to create removal jurisdiction. Although Section 332(a) of the Act preempts certain state law causes of action, there is no indication that Congress intended to make such claims removable. Other federal courts faced with this precise issue have reached the same conclusion. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 54 (2d Cir.1998); *Aronson*, 90 F.Supp.2d at 668; *Bauchelle*, 989 F.Supp. at 646–48.[6] In addition, unlike the ERISA and the Labor–Management Relations Act, the FCA contains a savings clause which provides that:

> Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

47 U.S.C. § 414. This clause is further evidence that Congress did not intend to invoke the doctrine of complete preemp-

tion under the FCA. *See Aronson*, 90 F.Supp.2d at 668; *Bauchelle*, 989 F.Supp. at 648; *Weinberg v. Sprint Corp.*, 165 F.R.D. 431, 439 (D.N.J.1996).

For these reasons, the Court concludes that the state court action was improperly removed on the basis of federal question jurisdiction. *See Metropolitan Life*, 107 S.Ct. at 1548 (Brennan, J., concurring) ("[T]he prudent course for a federal court that does not find a clear congressional intent to create removal jurisdiction will be to remand the case to state court.").

### B.

■ Alternatively, AT & T argues that federal jurisdiction is proper because the parties are citizens of different state and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).[7] In its removal notice, AT & T points out that plaintiffs filed a virtually identical lawsuit in federal court seeking $100 million in compensatory and punitive damages on behalf of a putative class of digital wireless subscribers. (Notice of Removal ¶ 10). To the extent that this sum includes punitive damages, AT & T maintains that it is proper to aggregate such amounts for purposes of determining the amount in controversy.[8]

---

5. For example, ERISA completely preempts state law because its jurisdictional sections closely parallel analogous provisions of the Labor–Management Relations Act. Moreover, the legislative history of ERISA indicates that Congress intended such actions "to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the [LMRA]." *Metropolitan Life*, 107 S.Ct. at 1547–48, *quoting* H.R. Conf. Rep. No. 93–1280, *reprinted in* 1974 U.S.C.C.A.N. 4639, 5107 (1974).

6. The Court acknowledges that the Seventh Circuit reached a different result in *Bastien v. AT&T Wireless Services, Inc.*, 205 F.3d 983 (7th Cir.2000). However, *Bastien* contains no discussion of the three-part test for complete preemption followed in this circuit.

7. Plaintiffs do not dispute that there is complete diversity between the parties. Indeed, plaintiffs are all citizens of Texas.

(Plf.Orig.Pet.¶¶ 2–4) AT & T Corporation is incorporated under New York law and has its principal place of business in New Jersey. (*Id.* ¶ 5; Notice of Removal ¶ 9). AT & T Wireless Services, Inc is a Delaware corporation with its principal place of business in Washington. (Plf. Orig. Pet. ¶ 6; Notice of Removal ¶ 9).

8. AT & T also argues that plaintiffs are bound by the admission in their federal class action complaint that the amount in controversy exceeds $75,000. A judicial admission is conclusively binding only in the case in which the pleading is filed *See In re Raiford*, 695 F.2d 521, 522–23 (11th Cir.1983); *State Farm Mutual Automobile Insurance Co. v. Worthington*, 405 F.2d 683, 687 (8th Cir.1968). Although the federal case and removed state case have now been consolidated, they were originally filed as separate lawsuits. Therefore, the allegations in plaintiffs' federal complaint are not binding in the state court action.

Plaintiffs counter that punitive damages should not be aggregated for jurisdictional purposes.

■ It is well-settled that "separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Snyder v. Harris,* 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969). However, the Fifth Circuit has held that damages can be aggregated "where two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1330 (5th Cir.1995), *quoting Snyder,* 89 S.Ct. at 1056. The issue in *Allen* was whether joint claims for punitive damages under Mississippi law satisfied this test. The court noted that Mississippi followed the almost unanimous rule that "punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct." *Id.* at 1332. Thus, punitive damages are "fundamentally collective" under Mississippi law. *Id.* at 1333. The court allowed the 512 plaintiffs in that case to aggregate their punitive damage claims in order to satisfy the jurisdictional amount in controversy requirement. *Id.* at 1337.

A seemingly opposite result was reached just three years later in *Ard v. Transcontinental Gas Pipe Line Corp.,* 138 F.3d 596 (5th Cir.1998). *Ard* involved a lawsuit filed in Louisiana state court by 350 plaintiffs arising out of a natural gas pipeline explosion. Each plaintiff stipulated that his claim was worth less than $50,000.[9] Nevertheless, the defendant removed the case to federal court. The district court denied plaintiffs' motion to remand on the grounds that the punitive damage claims could be aggregated for purposes of determining the amount in controversy. The Fifth Circuit reversed. In so holding, the court noted that "ordinarily the punitive damage claims of multiple plaintiffs may not be aggregated for purposes of determining jurisdictional amount." *Id.* at 602, *citing Lindsey v. Alabama Telephone Co.,* 576 F.2d 593, 594 (5th Cir.1978). The *Ard* court dismissed the *Allen* decision as a peculiarity of Mississippi law.[10] Finding no analogous principle in Louisiana law regarding the nature of punitive damages, the court declined to depart from *Lindsey.* *Id.*

Predictably, AT & T relies on *Allen* as authority for aggregating punitive damages to meet the amount in controversy requirement. Plaintiffs rely on *Lindsey* and *Ard.* However, these cases can be reconciled. The *Allen* court emphasized that punitive damages in Mississippi "are never awarded to benefit the injured party as a matter of right, but rather to punish and to compel the wrongdoer to have due and proper regard for the rights of the public." *Allen,* 63 F.3d at 1332, *quoting McGowan v. Estate of Wright,* 524 So.2d 308, 310 (Miss.1988). By contrast, punitive damages have a compensatory element under Louisiana law. *See Addison v. Illinois Central Railroad Co.,* 967 F.Supp. 173, 181 (E.D.La.1997) (punitive damage award is tailored to harm caused to plaintiff). Thus, the Court must look to the purpose of punitive damages under Texas law to determine whether it gives rise to the same collective right found in *Allen* or

---

9. At the time this suit was filed, federal diversity jurisdiction was not proper unless the amount in controversy exceeded $50,000. The minimum jurisdictional amount has since been raised to $75,000.

10. In response to a petition for rehearing, the *Allen* court stated:

> [T]he panel is of the unanimous view that the opinion in this case specifically reflects a result under the Mississippi law of punitive damages and is not to be construed as a comment on any similar case that might arise under the law of any other state.
>
> *Allen v. R & H Oil & Gas Co.,* 70 F.3d 26, 26 (5th Cir.1995).

merely creates an individual right as in *Ard.*

The critical inquiry under *Allen* is whether punitive damages under state law are designed to punish the wrongdoer rather than benefit the injured party. *Allen,* 63 F.3d at 1332–33. In Texas, it is clear that exemplary damages are awarded as a penalty or by way of punishment. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(5) (Vernon 1997). "[T]he Texas Supreme Court has emphasized at least since 1847 that exemplary damages are awarded not to compensate the plaintiff for any injury received but to punish the defendant and to deter others." *Estate of Moore v. Commissioner of Internal Revenue,* 53 F.3d 712, 715 (5th Cir.1995); *see also In re Norplant Contraceptive Products Liability Litigation,* 907 F.Supp. 244, 246 (E.D.Tex. 1995) (punitive damages under Texas law "have no compensatory purpose"). A plaintiff has no claim of right to punitive damages in Texas. *In re Norplant,* 907 F.Supp. at 246, *citing Transportation Insurance Co. v. Moriel,* 879 S.W.2d 10, 17 n. 7 (Tex.1994). Like Mississippi, the determination of punitive damages in Texas is entirely within the discretion of the trier of fact. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.010(b).

These same factors prompted the *Allen* court to conclude that punitive damages are "fundamentally collective" and can be aggregated for jurisdictional purposes. *See Allen,* 63 F.3d at 1332–34. At least four other federal district courts have found that the Texas law governing punitive damages meets the *Allen* test. *See, e.g. Cortez v. Sprint Spectrum LP.* No. M-97–259, Report and Recommendation at 24–25 (S.D.Tex. Sept. 9, 1998); *Acosta v. Amoco Oil Co.,* 978 F.Supp. 703, 706–07 (S.D.Tex.1997); *Corley v. Southwestern Bell Telephone Co.,* 924 F.Supp. 782, 786

(E.D.Tex.1996); *In re Norplant,* 907 F.Supp. at 246.[11]

■ The logic of these cases would seem to support AT & T's argument that plaintiffs' punitive damage claims should be aggregated. However, the Fifth Circuit has recently spoken again on this issue. In *H & D Tire and Automotive–Hardware, Inc. v. Pitney Bowes, Inc.,* 227 F.3d 326 (5th Cir.2000), defendants removed a state class action suit brought by Pitney Bowes customers who allegedly were overcharged in the calculation of lease payments. Plaintiffs claimed that individual actual damages would not exceed $30,000. However, defendants argued that the punitive damage claims could be aggregated to meet the amount in controversy requirement. The Fifth Circuit disagreed. With little discussion and no analysis of *Allen,* the court held that it was bound to follow *Lindsey* as the "earliest, and thus controlling, decision in this circuit ..." *Id.* at 330, *citing Harvey v. Blake,* 913 F.2d 226, 228 n. 2 (5th Cir.1990) ("When panel decisions appear to conflict, we are bound to follow the earlier opinion."). Thus, punitive damages cannot be aggregated under current Fifth Circuit law.

The Court concludes that removal was improper on the grounds of diversity of citizenship and federal question jurisdiction. Accordingly, the state court action must be remanded.

### III.

Plaintiffs allege that this Court has subject matter jurisdiction over their federal class action because "the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs." (Plf.Compl.¶ 6). As previously discussed, plaintiffs cannot meet the amount in controversy requirement by aggregating punitive damages.

---

11. A different result was reached in *ABS Insurance Ltd. v. National Union Fire Insurance Co.,* 51 F.Supp.2d 762 (E.D.Tex.1999). However, that case does not examine the nature of punitive damages under Texas law. Moreover, the court suggested that a different result may apply in a class action context. *Id.* at 770.

Counsel admitted at oral argument that the Court cannot retain jurisdiction if aggregation is improper. Therefore, the federal class action is dismissed *sua sponte* for lack of subject matter jurisdiction. *See* FED. R. CIV. P. 12(h) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

## CONCLUSION

Plaintiffs' motion to remand the state court action is granted. The Court *sua sponte* dismisses the federal court action for lack of subject matter jurisdiction. By separate order, the Court will sever the two cases and enter appropriate orders consistent with the rulings set forth herein.

SO ORDERED.